Karen D. PETERS, et al.,
Plaintiffs-Appellees
Cross-Appellants,

v.

The CITY OF SHREVEPORT,
Defendant-Appellant
Cross-Appellee.

No. 86–4608.

United States Court of Appeals,
Fifth Circuit.

May 26, 1987.
Rehearing and Rehearing En Banc
Denied July 22, 1987.

L. Edwin Greer, Charles C. Grubb, Shreveport, La., for defendant-appellant cross-appellee.

Johnnie J. Butler, Acting Gen. Counsel, Washington, D.C., for amicus–E.E.O.C.

Frances Baker Jack, Hunter & Jack, James J. Thornton, Johnston & Thornton, Shreveport, La., for plaintiffs-appellees cross-appellants.

Before RANDALL and GARWOOD, Circuit Judges, and SCHWARTZ,* District Judge.

RANDALL, Circuit Judge:

I.

The twenty-seven plaintiffs and intervenors in this case are currently or were formerly employed by the defendant City of Shreveport in the capacity of "police communications officer" ("PCO"). PCOs

* District Judge of the Eastern District of Louisiana, sitting by designation.

answer the city police department's telephones, plot the changing positions of patrol cars on the department's computer, and address citizen's complaints to the nearest patrol car by means of a two-way radio. The plaintiffs, a group composed of twenty-four women and three physically handicapped men, alleged that the city discriminated against them on the basis of sex by paying approximately forty percent higher wages to its "fire communications officers" ("FCOs"), a predominantly male group, for substantially equal work.

The city had always paid FCOs substantially more than PCOs,[1] but in 1981 the disparity increased dramatically when the city became aware of and began to comply with a state statute setting minimum salaries for FCOs at a rate twenty-five percent higher than that of firemen. La.Rev.Stat. Ann. § 33:1992(9) (West Supp.1986) ("A fire alarm operator or dispatcher, or any other person doing this type of work for the fire department, shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman."). Since the statute contains a similar provision for fire captains, the city brought itself into compliance by equating the salaries for FCOs with that of the fire captain.

In February of 1983, plaintiffs brought suit against the city, alleging that differences in the city's wage, promotion, and pension policies for FCOs and for PCOs violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d), Title VII, 42 U.S.C. § 2000–e et seq., the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the fourteenth amendment to the United States Constitution.

After a bench trial, the district court found that the plaintiffs had proven a prima facie case under both the Equal Pay Act and Title VII with respect to the wage disparity between FCOs and PCOs. The district court also found, however, that although sex was a factor in the city's decision to pay FCOs more than PCOs, it was not a significant factor in the decision. Thus, the city carried its burden of rebutting plaintiffs' Title VII case by showing that sex was not a significant factor in its decision, but failed to rebut the plaintiffs' case under the Equal Pay Act because it could not show that sex "provide[d] no part of the basis for the wage differential." 29 C.F.R. § 800.142 (1986), *superseded by The Equal Pay Act: Interpretations*, 51 Fed. Reg. 29,816 (August 20, 1986) (to be codified at 29 C.F.R. Part 1620). Plaintiffs' failure to prove the discriminatory intent required by Title VII also foreclosed recovery under section 1983 and the fourteenth amendment. Thus, the district court found that the plaintiffs were entitled to relief solely under the Equal Pay Act.

The district court awarded plaintiffs two years of unpaid wages, computed as the difference between the wages each plaintiff received and the wages each plaintiff would have received had she been an FCO during this period. Because he found that the city's violation of the Equal Pay Act was not willful, the trial judge declined to

1. *See* Shreveport, La., Ordinance Adopting New Salary Schedules for Municipal Fire and Police Civil Service Employees Nos. 47 (Jan. 26, 1978), 574 (June 29, 1978), 82 (April 12, 1979), 285 (Jan. 7, 1980), 61 (March 27, 1981) (setting salary levels for PCOs at "Level I" and salary levels for firefighters at "Level II"); *Peters v. City of Shreveport*, No. 83–0460 (W.D.La. Jan. 30, 1984) (amended pre-trial order) (stipulating that FCOs had always been paid at least as much as firefighters). For example, the pay scale for fire and police employees adopted by the ordinance dated January 26, 1978 set the monthly wages for Levels I and II at the following rates:

| Salary Level Starting Pay | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| I (includes PCOs) | $510 | 540 | 570 | 600 | 630 | 660 | 690 | 720 |
| II (includes FCOs) $650 | 850 | 880 | 910 | 940 | 975 | 1,015 | 1,060 | 1,105 |

The above figures for Level I do not include state supplemental pay, which at the time was payable to PCOs after a year of employment. See 1977 La. Acts No. 345, § 1. The starting pay for FCOs was thus approximately 27% higher than that of the PCOs. The other pay levels for FCOs were approximately 20% higher than those of the PCOs, even when the latter were entitled to state supplemental pay.

award more than two years' worth of back wages. Finding also that the city had acted in good faith, the district court refused to award liquidated damages.

Before agreeing to a precise computation of damages for each plaintiff as required by the district court's judgment, the parties appealed to this court. In an unpublished opinion, we dismissed the appeal for lack of jurisdiction. *Peters v. City of Shreveport,* No. 85–4409, slip op. (5th Cir. May 23, 1986) [790 F.2d 892 (Table)]. Because the district court had not yet entered judgment on plaintiffs' claims, the judgment appealed was not final and we lacked jurisdiction under 28 U.S.C. § 1291. *Id.* at 7; *see Gonzalez v. Texas Employment Comm'n,* 563 F.2d 776, 777 (5th Cir.1977).

Having now obtained a final judgment from the court below, the parties again appeal the district court's decision. The city does not contest the district court's finding that the FCOs and the PCOs perform "equal" work within the Equal Pay Act. Instead, the city argues that the differential between FCO and PCO wages was based on a "factor other than sex"— namely, its reliance on a gender-neutral state statute—and therefore was excepted from the scope of the Equal Pay Act. The city also contends that since the PCO position has historically been occupied by men as well as women, the plaintiffs failed to make out a prima facie case of sex discrimination. The city further attacks the district court's award of damages to male plaintiffs.

In their cross-appeal, plaintiffs attack the district court's refusal to award liquidated damages, arguing that the city failed to carry its burden of showing that it acted in good faith. Plaintiffs also attack the lower court's refusal to award a third year of back pay for a willful violation, and argue

that the court erred in not awarding prejudgment interest. Finally, plaintiffs take issue with the district court's finding that sex discrimination did not play a significant role in causing the disparity in pay between FCOs and PCOs. Because they proved discriminatory intent by a preponderance of the evidence, plaintiffs contend that the court below should have granted their claims for relief under Title VII, section 1983, and the fourteenth amendment.

## II.

Congress enacted the Equal Pay Act to remedy what was perceived as a serious and deeply engrained problem of employment discrimination in private industry: the fact that "[t]he wage structure of all too many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same." S.Rep. No. 176, 88th Cong., 1st Sess. 1, *reprinted in* 109 Cong.Rec. 8914, 8914 (1963) [hereinafter cited as *Senate Report*]. The existence of wage differentials based upon sex in American industry had a number of unhealthy effects upon the nation's economy, such as the depression of wages and living standards of employees necessary for their health and efficiency, the prevention of the maximum utilization of available labor resources, and the proliferation of labor disputes—all of which burdened commerce and the free flow of goods in commerce. The Equal Pay Act of 1963, Pub.L. No. 88–38, § 2, 77 Stat. 56 (1963) (also finding that wage differentials based on sex constitute an "unfair method of competition"). In response to these concerns about the economic and social consequences of disparate wages,[2] Congress

---

2. Recent congressional hearings indicate that the concerns addressed by Congress in 1963 remain pressing today:

In 1960, just over half of all working women were clerks, saleswomen, waitresses, and hairdressers. Today just under half of all working women are in these categories. Twenty years ago 12 per cent of women were professional and technical workers—over one half of these were teachers and nurses. To-

day, 16 per cent are professional and technical workers—still over half are teachers and nurses. Twenty years ago 5 per cent of working women were managers and administrators. Today 6 per cent are in these jobs. Twenty years ago 1 per cent of working women were in skilled craft jobs. Today 2 per cent are in these jobs.

*Sex Discrimination in the Workplace, 1981: Hearings Before the Senate Comm. on Labor and*

adopted a solution that "was quite simple in principle: to require that 'equal work will be rewarded by equal wages.'" *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) (quoting *Senate Report, supra,* at 1).

In response to repeated industry fears about a new and unfamiliar bureaucracy being set up to administer the Act, Congress enacted its new sex discrimination legislation as an amendment to the minimum wage provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* The Equal Pay Act would thus be administered by a familiar agency equipped with enforcement procedures focused by years of judicial interpretation. Moreover, the scope of the Act's application would be limited by the FLSA's careful definitions of "employers," "employee," and "establishment." *See* 29 U.S.C. § 202.

■ The Act's structure is relatively straightforward. It proscribes discrimination "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). Thus, to establish a prima facie case under the Equal Pay Act, a plaintiff must show (1) that his or her employer is subject to the Act; (2) that he or she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) that he or she was paid less than the employees of the opposite sex providing the basis of comparison. *Jones v. Flagship Int'l,* 793 F.2d 714, 722–23 (5th Cir.1986). A showing of "equal work" requires only that the plaintiff prove that the "skill, effort and responsibility" required in the performance of the jobs compared are substantially equal. *Id.* at 723; *see also Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1049 (5th Cir.1973) (adopting "substantially

equal work" test). Unlike the showing required under Title VII's disparate treatment theory, proof of discriminatory intent is not required to establish a prima facie case under the Equal Pay Act. *E.g., Patkus v. Sangamon-Cass Consortium,* 769 F.2d 1251, 1260 n. 6 (7th Cir.1985); *Strecker v. Grand Forks County Social Service Bd.,* 640 F.2d 96, 99 n. 1 (8th Cir.1980) (en banc).

Once the plaintiff shows that he or she is paid less than an employee of the opposite sex for substantially equal work, the burden of proof "shifts to the employer to show that the differential is justified under one of the Act's four exceptions." *Corning Glass Works,* 417 U.S. at 196, 94 S.Ct. at 2229; *Plemer v. Parsons-Gilbane,* 713 F.2d 1127, 1136 (5th Cir.1983). The Act provides one general and three specific exceptions for disparate wage payments "made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). These exceptions "are affirmative defenses on which the employer has the burden both of production and of persuasion." *Plemer,* 713 F.2d at 1136 (citing *Corning Glass Works,* 417 U.S. at 195–96, 94 S.Ct. at 2228–29).

### III.

The first question the city raises in its appeal is whether the district court erred in finding that the city had not carried its burden of proving that its compliance with a state statute excepted the differential in FCO and PCO wages from the purview of the Equal Pay Act. The city argues that its reliance on a valid state statute falls within the Act's exception for a "differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). The district court concluded that "compliance with state law is not an exception to the mandate of equal pay for equal work under the Equal Pay Act." The court further concluded that the city had not made the re-

quired showing that sex "provides no part of the basis for the wage differential." 29 C.F.R. § 800.142, *superseded by* 51 Fed. Reg. 29,816 (August 20, 1986). The city argues that the state law is the sole reason for the disparity in pay, and that this gender-neutral statute is a paragon of a factor other than sex. Since the goals of the state statute are not in conflict with the goals of the Equal Pay Act, compliance with the statute should be considered a "factor other than sex" and excepted from the Equal Pay Act.

While the plaintiffs agree that the statute is gender-neutral, they argue that compliance with the statute is irrelevant for purposes of the Equal Pay Act. The statute requires that FCOs be paid a certain sum; it does not fix the salary of FCOs at a certain level relative to that of the PCOs. Since nothing prevents the city from paying PCOs equally for performing work equal to that performed by the FCOs, the statute does not justify the differential under the "factor other than sex" exception. To the contrary, the evidence demonstrates that with respect to every other minimum salary mandated by the state statute, the city has matched police department wages to those of the corresponding rank in the fire department.

Critical to a grasp of the issues presented by this point of error is a clear understanding of the basis of the district court's decision. The district court found that the plaintiffs demonstrated they were paid less for work equal to that performed by the opposite sex. This finding had two distinct effects. As to the Equal Pay Act claims, the burden of *proof* shifted to the city to establish the application of one of the Act's four exceptions. As to the Title VII claims, the burden of *production* shifted to the city to articulate a nondiscriminatory reason for the wage differential. The burden of persuading the court that the differential was due to the city's intentional sex discrimination remained with the plaintiffs as to the Title VII claims.[3] The district court found that compliance with the state statute was the primary motivating factor in the wage differential and that sex was not a significant factor in the city's decision. Since sex was not a significant factor, the plaintiffs failed to carry their ultimate burden under Title VII of proving discriminatory intent. *See Garcia v. Gloor*, 609 F.2d 156, 160 (5th Cir.1980) (impermissible factor must play a significant role in employer's decision for violation of Title VII to occur). The district court also found, however, that sex, while not a significant factor, was nonetheless a factor in the city's decision. The city therefore failed to carry its burden of proving the application of the Equal Pay Act's fourth exception, because it could not show that sex provided "no part of the basis for the wage differential." 29 C.F.R. § 800.142. The plaintiffs thus were entitled to relief under the Equal Pay Act, but not under Title VII.

3. In *Plemer v. Parsons-Gilbane*, this court carefully analyzed the difference between the burden of proof in a Title VII disparate treatment case and that in an Equal Pay Act case:

In a Title VII case, the plaintiff must first make out a *prima facie* case. The *prima facie* case will create a presumption that the employer discriminated against the employee. "If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216 (1981).

The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory action. *Id.* At this point, the Title VII defendant does not have the burden of persuasion; it "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* (Citation and footnote omitted.)

If the defendant carries this burden, the plaintiff then bears the "ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. In a Title VII case, the burden of persuasion always remains with the plaintiff.
713 F.2d at 1136.

Under the Equal Pay Act, however, the burden of persuasion may shift from the plaintiff to the defendant. The plaintiff's having made out a *prima facie* case has different ramifications under the Equal Pay Act than it has under Title VII. Under the Equal Pay Act, the plaintiff has the burden of proof to "show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which require equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1, 10 (1974). If the plaintiff meets this burden, the burden of proof "shifts to the employer to show that the differential is justified under one of the Act's four exceptions." *Id.* at 196, 94 S.Ct. at 2229, 41 L.Ed.2d at 11.

### A.

In reviewing the decision of the district court, we bear in mind rule 52(a)'s admonition that "[f]indings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). This standard does not permit the appellate court to overturn the finding of the trial judge simply because it would have decided the case differently: "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact,

it would have weighed the evidence differently." *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

Rule 52(a) does not, however, "inhibit an appellate court's power to correct errors of law, including those that may infect a so-called mixed finding of law and fact, or a finding of fact that is predicated on a misunderstanding of the governing rule of law." *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 501, 104 S.Ct. 1949, 1960, 80 L.Ed.2d 502 (1984). The district court's conclusions of law are subject to plenary review on appeal. *Matter of Missionary Baptist Found. of America, Inc.*, 712 F.2d 206, 209 (5th Cir.1983).

With these standards of appellate review, in mind, we turn to the district court's conclusion that because sex was a factor, albeit not a significant factor, in the city's decision not to pay PCOs as much as FCOs, the city's partial reliance upon a state statute did not qualify as a "factor other than sex" exempting the differential from the purview of the Equal Pay Act.

### B.

The keystone of the district court's finding of a violation of the Equal Pay Act was its adoption of the Secretary of Labor's interpretation of the standard governing the "factor other than sex" exception: "The exception of a 'factor other than sex' under the Equal Pay Act is met if, and only if, sex 'provides no part of the basis for the wage differential.' 29 CFR 800.142." *Peters v. City of Shreveport*, No. 83–0460, slip op. at 6 (W.D.La. May 13, 1985). As a general rule, interpretations promulgated by the agency primarily responsible for enforcement of the legislation in question are given great deference by the courts, and are presumed valid unless shown to be erroneously in conflict with the legislation itself.[4] *See, e.g., Griggs v.*

---

**4.** Courts have long been guided by the "'venerable principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong.'" *E.I. du Pont de Nem-*

*ours & Co. v. Collins*, 432 U.S. 46, 54–55, 97 S.Ct. 2229, 2234, 53 L.Ed.2d 100 (1977) (quoting *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969)). When an administrative inter-

*Duke Power Co.,* 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971); *Brennan v. City Stores, Inc.,* 479 F.2d 235, 239–40 (5th Cir.1973) (adopting Secretary of Labor's interpretations of certain provisions of the Equal Pay Act). In the instant case, however, our analysis of the agency interpretation in question is complicated by a change in the administration of the Act.

Acting under the authority delegated to him under the Reorganization Act of 1977, 5 U.S.C. §§ 901–912, President Carter in 1978 transferred the federal government's authority to enforce the Equal Pay Act from the Secretary of Labor to the Equal Employment Opportunity Commission ("EEOC" or "Commission"). *See EEOC v. Hernando Bank, Inc.,* 724 F.2d 1188, 1190 (5th Cir.1984). In 1981, the EEOC proposed interpretations of the Equal Pay Act that would supersede the Secretary of Labor's interpretations published at 29 C.F.R. Part 800. *See The Equal Pay Act: Interpretations,* 46 Fed.Reg. 43,848, 43,848 (Sept. 1, 1981) (proposed rules). Although the EEOC declined to adopt as its own the earlier interpretations promulgated by the Secretary, it stated that employers could rely upon the Department of Labor's interpretations pending the adoption of final EEOC interpretations. The EEOC felt that

the Department of Labor's interpretations needed to be revised "to incorporate statutory changes to the Fair Labor Standards Act that occurred in 1972, 1974, and 1977, to conform to principles set forth in recent judicial decisions, and to reflect later experience obtained through enforcement of the Equal Pay Act." *Id.* A principle similar to that relied upon by the district court appeared in the EEOC's proposed interpretations. *See id.* at 43,851–52 (§ 1620.12, "Permissible bases for pay differentials").

A few months after the district court rendered its final judgment in the instant case, the EEOC published its final interpretations. *The Equal Pay Act: Interpretations,* 51 Fed.Reg. 29,816–26 (Aug. 20, 1986) (final rules) (to be codified at 29 C.F.R. Part 1620). The section of the proposed interpretations containing the principle analogous to that relied upon by the district court "was deleted because the Commission believe[d] that it did not provide adequate guidance." *Id.* at 29,816. While the EEOC did promulgate in its place a number of sections dealing with specific employer practices, the broader principle that sex must provide "no part of the basis for the wage differential" was not included in the final EEOC interpretations. *See id.* at 29,825–26. Unlike other instances where the EEOC interpretations differed

pretation of a statute's provision is made contemporaneously with the enactment of the statute, courts give the construction more deference. *See Collins,* 432 U.S. at 55, 97 S.Ct. at 2234; *FTC v. Mandel Bros., Inc.,* 359 U.S. 385, 391, 79 S.Ct. 818, 823, 3 L.Ed.2d 893 (1959). Moreover, the impact of a contemporaneous construction "carries most weight when the administrators participated in drafting and directly made known their views to Congress in committee hearings." *Zuber v. Allen,* 396 U.S. 168, 192, 90 S.Ct. 314, 327, 24 L.Ed.2d 345 (1969). "In such circumstances, absent any indication that Congress differed with the responsible department, a court should resolve any ambiguity in favor of the administrative construction, if such construction enhances the general purposes and policies underlying the legislation." *Id.*

The principle that sex must provide no part of the basis for the wage differential was first proposed by Secretary of Labor Wirtz less than a year after the enactment of the Equal Pay Act. *See Equal Pay for Equal Work under the Fair Labor Standards Act,* § 800.117, 29 Fed.Reg.

5548 (1964) (final rules). Secretary Wirtz testified extensively before both the House and the Senate subcommittees on labor, who were charged with developing an equal pay bill for congressional consideration. *See Equal Pay Act: Hearings on H.R. 3861, 4269 and Related Bills Before the Special Subcomm. on Labor of the House Comm. on Education and Labor,* 88th Cong., 1st Sess. 6–75 (1963) [hereinafter cited as *House Hearings* ]; *Equal Pay Act: Hearings on S. 882 and S. 910 Before the Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare,* 88th Cong., 1st Sess. 14–65 (1963). Although the bill originally supported by the Department of Labor used a different enforcement mechanism and did not contain a general exception for a differential based on a "factor other than sex," *see House Hearings* at 2–6, the Department of Labor equally supported the bill ultimately adopted by Congress. *See* 109 Cong.Rec. 7682 (1963) (statement of Rep. Goodell). The Secretary, having participated with the relevant subcommittees in the drafting of the Act, was in a position to accurately interpret the Act in accordance with Congress's intentions.

from those of the Department of Labor, the omission of the principle relied upon by the court below did not receive an extensive EEOC explanation. *Cf. id.* at 29,817 (examining in depth changes in law necessitating revision of the Secretary's interpretation regarding fringe benefit payments).

Seeking guidance as to the impact of the EEOC's new interpretations upon the decision of the district court in this case, we asked the parties to submit supplemental letter briefs addressing this question. We also inquired whether the EEOC would submit a brief as *amicus curiae*, a request which the Commission has graciously granted.

Although the city originally accepted the Secretary's interpretations as accurately reflecting Congress's intent, *see* Brief of Appellant at 9, 11 ("Congress did not limit this [fourth] exception in any way except that it must not relate to sex. See, 29 C.F.R. Sec. 800.142."), the city now contends that the EEOC's omission of the Secretary's principle represents an intentional rescission of a misconceived rule. Since the Secretary's interpretation now lacks administrative approval, the city argues, we should abandon the district court's conflicting approach and construe harmoniously the Equal Pay Act and Title VII. The Equal Pay Act and Title VII are similar statutes with similar legislative purposes. In fact, Title VII incorporates the Equal Pay Act's four affirmative defenses—including the "factor other than sex" exception at issue here—with respect to sex discrimination in the payment of wages, thanks to the so-called Bennett Amendment. *See generally County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). To interpret the Equal Pay Act's defenses under a standard different from that applicable to Title VII, when the same statutory wording is employed in both, injects unnecessary confusion into the issue and serves to undercut the remedial purposes of the legislation. According to the principles of sex discrimination developed under Title VII, the fact that sex played an insignificant role in the establishment of the wage differential would not subject the city to liability. The same result, the city argues, should obtain under the Equal Pay Act.

Plaintiffs assert, on the other hand, that the issuance of new interpretations by the EEOC does not represent an affirmative effort to change the law and therefore has no effect upon the validity of the trial court's ruling. The Secretary's interpretation has been adopted by the courts, plaintiffs argue, is a proper interpretation of the Act, and remains so even if the exact wording of the Secretary's interpretation does not appear in the streamlined version of such interpretations promulgated by the EEOC.

Plaintiffs' position is supported by the *amicus* brief of the EEOC, which takes the position that the agency "has not abandoned this principle and continues to believe that [the Secretary's interpretation] represents the proper construction of the statutory language." Letter Brief of EEOC at 3. Far from intending to rescind the Secretary's interpretation, the EEOC states that "[t]his has been the government's position for at least twenty years, and the principle has been adopted by the courts." *Id.* (footnote omitted).

Given the ambiguous treatment of the Secretary's interpretation by the published EEOC rules, and the position taken by the EEOC in its *amicus* brief, we are satisfied that the Secretary's interpretation retains its validity as an official administrative interpretation of the Act. Our inquiry does not end there, however.

Upon closer examination, we find that the Secretary's interpretation is susceptible to the same ambiguity that necessitates the construction of the statute undertaken by that interpretation. The essential question in the instant appeal is the correct construction of the words "based on" in the language of the Act's fourth exception: how important a role must the factor of sex play in the employer's decision for the resultant differential to be "based on" the factor of sex? The Secretary's interpretation is susceptible to a similar question: how important a role must the factor of sex play in the employer's decision for the

resultant differential to provide a "part of" the basis for the wage differential. We take it for granted that a passing flight of discriminatory sentiment on the part of the employer, without more, would not defeat an otherwise valid defense under the Act. To what extent, then, must the factor of sex color an employer's decision for the wage differential to be "based on" that factor?

The parties' positions present two different tests of the necessary relation between the role of the factor of sex and the wage differential. The city, referring to Title VII jurisprudence, demands that a "but for" causal relation exist between the factor of sex and the differential before an otherwise legitimate defense under the Act's fourth exception is defeated. If the wage differential would have existed to the same extent despite the employer's peripheral consideration of the factor of sex, the city argues, there is no causal connection between the impermissible factor and the differential, and the differential therefore cannot be "based on" the factor of sex. The plaintiffs, on the other hand, rely on the language of the Secretary's interpretation in arguing for a broader construction of the statute. Plaintiffs' arguments presume that if the factor of sex plays any part whatsoever in the employer's decision, its decision is based in part on the factor of sex and therefore the defense must fail.

Our review of the directly relevant sources of law has provided little guidance as to which of the tests advocated by the parties best reflects the intent of Congress. The Act's legislative history is not helpful. The question of the requisite degree of relationship between the factor of sex in the employer's decision and the resultant wage differential was not discussed in the congressional committee hearings, the congressional committee reports, or the floor debates in the two houses of Congress. The legislative materials do not illuminate the relation Congress desired to impose by the connector "based on" in the text of the fourth defense.

Nor, unfortunately, do the administrative materials provide much guidance. As noted above, the language of the Secretary's interpretation is susceptible to an ambiguity similar to that of the statutory language it interprets. As plaintiffs assert, a considerable body of case law has evolved that adopts and applies the Secretary's interpretation.[5] The problem with these cases is that, with one exception,[6] not one

---

**5.** *See Gosa v. Bryce Hosp.*, 780 F.2d 917, 918 (11th Cir.1986); *Bence v. Detroit Health Corp.*, 712 F.2d 1024, 1029 (6th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984); *Morgado v. Birmingham-Jefferson County Civil Defense Corps*, 706 F.2d 1184, 1189 (11th Cir.1983), *cert. denied*, 464 U.S. 1045, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984); *EEOC v. Aetna Ins. Co.*, 616 F.2d 719, 725 (4th Cir.1980); *Brennan v. Owensboro-Daviess County Hosp.*, 523 F.2d 1013, 1031 (6th Cir.1975), *cert. denied*, 425 U.S. 973, 96 S.Ct. 2170, 48 L.Ed.2d 796 (1976); *Hodgson v. Security Nat'l Bank*, 460 F.2d 57, 59 (8th Cir.1972); *EEOC v. Madison Community School Dist. No. 12*, 103 Lab.Cas. (CCH) ¶ 34,738 (S.D.Ill.1986); *Grayboff v. Pendelton*, 102 Lab.Cas. (CCH) ¶ 34,624 (N.D.Ga.1984); *Winkes v. Brown Univ.*, 99 Lab.Cas. (CCH) ¶ 34,451 (D.R.I.1983); *EEOC v. Cleveland State Univ.*, 29 Empl.Prac.Dec. (CCH) ¶ 32,783 (N.D. Ohio 1982); *Schulte v. Wilson Indus., Inc.*, 547 F.Supp. 324, 341 (S.D.Tex.1982); *Melanson v. Rantoul*, 536 F.Supp. 271, 290 (D.R.I. 1982); *Kouba v. Allstate Ins. Co.*, 523 F.Supp. 148, 163 (E.D.Cal.1981), *rev'd on other grounds*, 691 F.2d 873 (9th Cir.1982); *Futran v. RING Radio Co.*, 501 F.Supp. 734, 738 (N.D.Ga.1980); *Marshall v. J.C. Penney Co.*, 464 F.Supp. 1166, 1195 (N.D.

Ohio 1979); *Bullock v. Pizza Hut, Inc.*, 429 F.Supp. 424, 429 (M.D.La.1977); *Brennan v. Sears, Roebuck & Co., Inc.*, 410 F.Supp. 84, 101 (N.D.Iowa 1976); *Brennan v. Cherokee State Bank*, 74 Lab.Cas. (CCH) ¶ 33,106 n. 1 (N.D. Iowa 1974); *Hodgson v. Robert Hall Clothes, Inc.*, 326 F.Supp. 1264, 1275 (D.Del.1971), *aff'd in part, rev'd in part on other grounds*, 473 F.2d 589 (3d Cir.1973).

**6.** In *Winkes v. Brown University*, the male plaintiff was paid less than a female who was also employed as a professor in his department. 99 Lab.Cas. (CCH) ¶ 34,451 (D.R.I.1983). The defendant university explained the wage differential as the result of its decision to match a more lucrative offer of employment to the female professor by another university. This decision in turn, the university argued, was based on a multitude of factors other than sex, such as the female professor's "strong academic record and impressive professional credentials." The district court found to the contrary, however, that the university's decision was based in part upon its desire to comply with a consent decree entered against it in a Title VII sex discrimination suit—a gender-based consideration not justified by the terms of the consent decree, which au-

of them applies the Secretary's interpretation in a mixed-motive context such as that of the instant case; in none of these cases was the question of the importance of the factor of sex relative to other factors raised. Instead, these cases present a factual pattern typically developed as follows. The employee proves her prima facie case and the burden of proof shifts to the employer. The employer then proffers an explanation accounting for the differential as based on a factor other than sex, and the court either accepts that explanation as sufficient, *see, e.g., EEOC v. Aetna Ins. Co.*, 616 F.2d 719, 725–26 (4th Cir.1980), or rejects the explanation as (a) factually inadequate or (b) unable to constitute a factor other than sex as a matter of law.[7] Because none of the cases using the Secretary's interpretation applies that standard in a mixed-motive context, none of these cases bears on the requisite weight of the factor of sex relative to other factors weighing in an employer's wage decision.[8]

thorized affirmative action only with respect to hiring, contract renewal, promotion, and tenure decisions. The court further found, however, that "[w]hile gender was undoubtedly a factor in the salary determination, it clearly was not the only consideration." The female professor's qualifications also factored into the decision. "Nevertheless, the *Lamphere* [Consent] Decree created a powerful incentive to retain a tenured female professor and caused gender to be the predominate [sic] factor in responding to the outside offer." The court thus found the university's "factor other than sex" defense to be inadequate.

While *Winkes*'s holding is of interest, it is not particularly helpful because the role played by the factor of sex in *Winkes* was clearly "predominant" enough to satisfy both the "but for" test proposed by the city and the "any part" test advocated by the plaintiffs.

7. *See, e.g., Schwartz v. Florida Bd. of Regents,* 807 F.2d 901 (11th Cir.1987) (court presented with problem of statistical evidence); *Gosa v. Bryce Hosp.*, 780 F.2d 917 (11th Cir.1986) (discussed *infra* note 8 in detail); *Brock v. Georgia Southwestern College,* 765 F.2d 1026 (11th Cir. 1985) (male professors paid less than female professors for equal work; employer's defense that higher wages for the female professors were dictated by their higher market value rejected as supported by insufficient evidence); *Bence v. Detroit Health Corp.,* 712 F.2d 1024 (6th Cir.1983) (female salespersons paid less per membership sale than male salespersons; court rejects employer's defense that membership market for women was greater than that for men and per sale rates tailored so that male and female salespersons received approximately equal salaries; sexual segregation of employees plus application of lower rate only to those selling memberships to women means that employer has not shown that sex provided no basis for the wage differential); *Morgado v. Birmingham-Jefferson County Civil Defense Corps,* 706 F.2d 1184 (11th Cir.1983) (female officer paid at lower rate than male officer with different title but same duties; court rejects as supported by insufficient evidence employer's defense that its various job descriptions constituted a merit system or a factor other than sex); *Ridgway v. United Hospitals-Miller Div.,* 563 F.2d 923 (8th Cir.1977) (female technician paid less than male technician performing same duties; court rejects defense that employer and male in initial negotiations anticipated that male would perform additional duties, need for such duties never arose, and employer began later, in order to retain male's employment, to pay male the higher salary initially anticipated; despite lack of intention to discriminate, district court's finding of discrimination upheld); *Brennan v. Owensboro-Daviess County Hosp.,* 523 F.2d 1013 (6th Cir.1975) (reversed on other grounds; district court had never reached question of whether employer had established a defense under the EPA); *Hodgson v. Security Nat'l Bank,* 460 F.2d 57 (8th Cir.1972) (male bank tellers paid more than female tellers doing same work; court rejects as supported by insufficient evidence bank's explanation that male tellers were "management trainees" on special training program).

8. It could be argued that *Gosa v. Bryce Hospital* is a mixed-motive case applying the Secretary's interpretation. 780 F.2d 917 (11th Cir.1986). We do not, however, read *Gosa* as a mixed-motive case. In *Gosa*, the plaintiff was a woman who, according to her employer's job classification system, performed the work of a Stock Clerk I, yet received the lower pay of a General Laborer because she could not pass the examinations required for classification as a Stock Clerk I. A male employee who normally worked at the much higher paid position of Property Inventory Officer was transferred to work with the plaintiff on a temporary basis. The plaintiff trained the male employee to perform her functions, and the two worked together performing the same functions for two years. During this period the male employee's pay was "red-circled," that is, he received his former, higher rate of pay even though he was temporarily working at a lower-paid position. It is clear that red-circling is a valid employment

Thus, while the directly relevant sources of law do not support the plaintiffs' interpretation of the statute, neither do these sources of law contradict the plaintiffs' interpretation. The ambiguous statutory language, unilluminated by the legislative history, the administrative interpretation, or the relevant case law, neither forecloses nor demands the interpretation advanced by the plaintiffs.

The city's position, on the other hand, looks to analogous principles of Title VII jurisprudence for support. The city argues, in essence, that Title VII law is *in pari materia* with sex-discrimination claims under the Equal Pay Act, and the Act therefore should be interpreted consistently with Title VII. *See generally,* 2A *Sutherland Statutory Construction* §§ 51.01–.03 (4th ed. 1984) (discussing interpretative relevance of related statutes). Given the peculiar circumstances of the enactment of Title VII as an instrument to combat sex discrimination, however, we hesitate to presume that Congress had the Equal Pay Act in mind in enacting Title VII. *Cf. id.* § 51.02 ("It is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter."). While the Equal Pay Act was crafted from its inception to fight sex discrimination, Title VII was conceived as a device to correct racial and other forms of discrimination: the House of Representatives amended the bill to proscribe sex discrimination only two days before voting on Title VII. *County of Washington v. Gunther,* 452 U.S. 161, 172, 101 S.Ct. 2242, 2249, 68 L.Ed.2d

751 (1981). "[N]either House of Congress had the opportunity to undertake formal analysis of the relation between the two statutes." *Id.* (footnote omitted). Thus, while the statutes were enacted within a year of each other and address the same problem of sex discrimination, the legislative history of Title VII indicates that a presumption that Title VII's structure was based upon the Equal Pay Act would be misplaced.

As the city points out, Congress did attempt to reconcile the Act with Title VII through its last-minute adoption of the Bennett Amendment, discussed at length in *Gunther,* 452 U.S. 161, 101 S.Ct. 2242. The Bennett Amendment incorporates the four affirmative defenses of the Equal Pay Act into the structure of sex-discrimination claims brought under Title VII's disparate treatment theory. The city derives from this amendment the proposition that the Act should in general be interpreted consistently with Title VII, a principle which we do not dispute. *See Orr v. Frank R. MacNeill & Son, Inc.,* 511 F.2d 166, 170 (5th Cir.), *cert. denied,* 423 U.S. 865, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975). We hesitate, however, to rely exclusively upon this principle to interpret as substantially identical the causal element of a Title VII plaintiff's case and the showing an employer must make under the Act's fourth defense. There is no question here of harmonizing an affirmative defense under Title VII with a similar defense under the Act, as the Bennett Amendment encourages. Instead, the city asks us to

practice constituting a factor other than sex. The district court in *Gosa* found that the plaintiff was entitled to Stock Clerk I pay but not the higher rate received by the male employee due to red-circling. The Eleventh Circuit affirmed, agreeing that the plaintiff was entitled to pay commensurate with her duties, that of a Stock Clerk I, and that the incremental salary paid to the male because of red-circling was excepted from the Act as a factor other than sex.

*Gosa* is not a dual motive case. The court broke down the wage differential into two distinct segments, and then examined the adequacy of the proffered explanation for each segment. With respect to the first segment of the wage differential, that between General Laborer and Stock Clerk I, the employer argued that the

differential was justified because the examinations that the plaintiff failed constituted a merit system. 780 F.2d at 919, 920. The district court rejected this justification, apparently on factual grounds: the hospital's justification was inadequate because "the hospital had 'unbridled discretion' to exempt employees from the merit system, ... it employed that discretion at will, and ... it thereby had control in setting employee wages." *Id.* at 920. The circuit court found that "the district court did not err in rejecting the hospital's merit system defense." *Id.* With respect to the second segment, the employer proffered a red-circling justification that both courts accepted. Thus, the courts credited only one motive for each distinct segment considered.

harmonize a defense under the Act with a requirement of the Title VII plaintiff's case. We feel that the city stretches the Bennett Amendment too far.

■ We conclude, however, that the result suggested by the city is correct, despite our disagreement with the reasoning used by the city to support its test. A fundamental precept of our system of justice is that it is unfair to impose liability for a result which would in any event have occurred absent the defendant's wrongdoing; in other words, the defendant's wrongful conduct must be a "but for" cause of the complained of result. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 270–71, 97 S.Ct. 555, 566, 50 L.Ed.2d 450 (1977) (If "the same decision would have resulted even had the impermissible purpose not been considered …, the complaining party in a case of this kind no longer fairly could attribute the injury complained of to improper consideration of a discriminatory purpose. In such circumstances, there would be no justification for judicial interference with the challenged decision."). To allow recovery when there is no causal relationship between the impermissible factor and the complained of result would create a "windfall" for the plaintiff by putting him in a better position than he would be in had the factor not been considered, a result often criticized by the courts. *See, e.g., Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285–86, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977). Had Congress intended such an extraordinary "windfall" to be awarded under the Act, we presume that it would have specified that this was to be the case. Absent such specific congressional instruction, we are constrained to give the Act its most reasonable construction: a differential is "based on" the factor of sex only if the factor of sex was a cause-in-fact of the differential.

■ It is worth explaining what we mean by cause-in-fact or "but for" causation. Analogizing to tort-law principles, the factor of sex is not a "but for" cause of the differential if, without the employer's consideration of the factor of sex, the wage differential would have been "the same in character and extent as that which [the employee] receives." *Restatement (Second) of Torts* § 432 comment *a* (1965). As we read the statute and the Secretary's interpretation, a differential is "based on" sex if the factor of sex is a "but for" cause of the differential; there is no further requirement under the statute, as there is under general principles of tort law, that sex be a "substantial factor" or "proximate cause" of the differential. *Cf. id.* § 433 (describing substantial factor requirement in negligence cases). We do not read the "but for" requirement of the Act's fourth defense as equivalent to a requirement of discriminatory intent; the good faith of an employer, by itself, does not constitute a defense under the Act. *See Hodgson v. American Bank of Commerce*, 447 F.2d 416, 423 (5th Cir.1971) ("The Act forbids all discriminations between male and female employees not based on factors other than sex, not just those intended to be based on sex. We do not believe that the 'based on any other factor other than sex' language of the statute was intended to provide a 'good faith' defense to a clear violation of the Act.").

#### C.

In the instant case, the district court clearly applied different substantive standards to the Title VII and Equal Pay Act claims. Since a "but for" causation standard applies, according to our holding today, under both statutes, the district court erred as a matter of law, although that error is certainly understandable given the dearth of authority addressing the application of the Equal Pay Act to mixed-motive situations. It is not clear whether the district court found that the same pay disparity would have existed even absent the city's consideration of the factor of sex; or whether, on the other hand, the court found that the factor of sex was a "but for" cause of the disparity although, under an analysis similar to that suggested in *Restatement (Second) of Torts* § 433 comment *d,* it was not a "substantial" cause

thereof. This is, as noted above, the same causation standard as that required under Title VII. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976) ("[T]he Title VII plaintiff [need not] show that he would have in any event been rejected or discharged solely on the basis of his race.... *[N]o more* is required to be shown than that race was a 'but for' cause.") (emphasis supplied); *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. Unit A Sept. 1981) (applying "but for" causation standard to Title VII case).

■ We nonetheless remand this case for further findings, despite the district court's holding that the requirements of Title VII were not satisfied, because we recognize the possibility that the city may be held liable under the Act but not under Title VII, even though the same causation requirements apply under the two statutes. The possibility of this result exists, we believe, for two reasons. First, such a result could be explained by the differing burdens of proof under the Act and Title VII. See *supra* note 3 and accompanying text. That is, it is conceivable in this case that the plaintiffs failed to carry their burden of proving a violation of Title VII, and at the same time the city may have failed to carry its burden of proving an affirmative defense under the Act. Second, it is possible on these facts that sex was a "but for" cause of some portion of the pay disparity, but that part of it would have existed in any event and wholly apart from any consideration of the factor of sex.[9] We therefore remand this case for further findings, asking the district court to apply the substantive causation standard herein set out to the Equal·Pay Act claims.

### D.

Plaintiffs present an alternative argument that, as a matter of law, reliance on state law cannot be a defense to a sex-dis-

crimination action: "One cannot subvert the Equal Pay Act and other federal acts by relying upon legally subordinate statutes." Appellee's Brief at 9; *see also Maxwell v. City of Tuscon*, 803 F.2d 444, 447 (9th Cir.1986) ("compliance with civil service requirements is not sufficient in and of itself" to establish a merit system defense under the Act); *Marshall v. Kent State Univ.*, 589 F.2d 255, 255–56 (6th Cir.1978) (same); *Usery v. Allegheny County Inst. Dist.*, 544 F.2d 148, 154 (3d Cir.1976) ("mere existence of separate statutory schemes for regulating [barbers and beauticians] is not a 29 U.S.C. § 206(d)(1)(iv) 'factor other than sex.'"); *Brennan v. Board of Educ.*, 374 F.Supp. 817, 831 (D.N. J.1974) (where possible to comply with both Equal Pay Act and state law, an employer must comply with both); *cf. Williams v. General Foods Corp.*, 492 F.2d 399, 403–04 (7th Cir.1974) (reliance on state statute addressed solely to women is not a defense to a Title VII claim); *Kober v. Westinghouse Elec. Corp.*, 480 F.2d 240, 246 (3d Cir.1973) ("discrimination ·based on reliance on conflicting state statutes is an intentional unfair employment practice") (Title VII case).

The EEOC, in its *amicus* brief, suggests the possible applicability of its interpretation to be codified at 29 C.F.R. § 1620.29:

> If a higher minimum wage than that required under the FLSA is applicable to a particular sex pursuant to State law, and the employer pays the higher State minimum wage to male or female employees, it must also pay the higher rate to employees of the opposite sex for equal work in order to comply with the EPA. Similarly, if overtime premiums are paid to members of one sex because of a legal requirement, such premiums must also be paid to employees of the other sex.

51 Fed.Reg. at 29,826.

■ We are unable to conclude, however, that La.Rev.Stat.Ann. § 33:1992(9), the state statute regulating the pay of

**9.** *See Gosa v. Bryce Hosp.*, 780 F.2d 917 (11th Cir.1986) (discussed in detail *supra* note 8). Given the wage differential predating the city's compliance with the state statute, see *supra* note 1, it is conceivable that *Gosa* might apply in the instant case. We, of course, express no opinion as to whether or not *Gosa*'s application is in fact warranted.

FCOs which the district court found to be "a non-discriminatory act," has been shown to be as a matter of law based in any way on sex. Plaintiffs have not attempted to demonstrate that this act of the Louisiana legislature was motivated by sex discrimination or attributable in any way to the City of Shreveport. The statute applies state-wide and makes no reference to or distinction on account of sex. *Cf. Williams,* 492 F.2d at 403–04 (ruling that employer's reliance on Illinois Female Employment Act, a statute expressly limiting the length of women's workday, was not defense to Title VII disparate impact action). There is no finding, or any conclusive showing, that on a state-wide basis the act has a sex discriminatory impact, or that females state-wide compose or composed a lower percentage of FCOs than of PCOs. This statute is therefore not within the EEOC interpretation addressing the situation where "a higher minimum wage … is applicable to *a particular sex* pursuant to State law" or where "overtime premiums are paid to members of *one sex* because of a legal requirement." 51 Fed.Reg. at 29,-826 (emphasis added). The Louisiana statute is not applicable to "a particular sex" or to "one sex," but broadly to all FCOs. Similarly, the Louisiana statute is not within the comparable provisions of the Secretary of Labor's interpretative regulations, *see* 29 C.F.R. § 800.161 (1986) (state minimum wage law "applicable to a particular sex"); *id.* § 800.162 (state law overtime requirements applicable to female but not male employees); *id.* § 800.163 (entitled "other laws not applying equally to employment of both sexes" dealing with state laws regulating "the employment of individuals of a specified sex"). Thus, the Louisiana statute qualifies, in our opinion, as a "factor other than sex." This, of course, would not excuse the city if (or to the extent) sex, as opposed to a sex-neutral determination of an appropriate wage, were a "but for" cause of the city's not paying the PCOs more. But, as noted *supra,* it is this point that the district court must address on remand. On this record, we must reject the plaintiffs' argument that compliance with La.Rev.Stat.Ann.

§ 33:1992(9) does not, as a matter of law, constitute a "factor other than sex."

### IV.

Because the city's other two points of error, if accepted by this court, would warrant reversal of the case in whole or in part and obviate the need for a remand, we pause to consider those arguments here. The city's second attack on the district court's judgment is based on the fact that neither the PCO class nor the FCO class is composed exclusively of members of one sex. The city notes that of the one hundred and one persons employed as PCOs in the twenty-year period presented to the court, twenty-six have been men. Although the FCO positions traditionally were exclusively occupied by men, at the time of trial (and, it seems, in response to a sex-discrimination suit) the FCOs were composed of nine men and one woman. The city argues that when there are substantial numbers of both sexes in the complaining class, and both sexes receive equal treatment, there is no basis for a claim of sex discrimination by members of either sex under the Equal Pay Act. Even if the Equal Pay Act does not require that a plaintiff group be one hundred percent male or female before a violation is possible, the city argues that there can nonetheless be no claim under the Act unless the number of men is "insufficient and inconsequential." When, as in the instant case, the complaining class historically has been twenty-five percent male, there can be no claim of sex discrimination under the Act. The Equal Pay Act was designed to remedy differences in pay for equal work between men and women: the Act was not conceived as a broad measure for subjecting all wage differentials to federal scrutiny.

Plaintiffs respond that the Equal Pay Act does not require that there be "perfect diversity of gender before a cause of action can arise." Plaintiffs note that half of the men who worked as PCOs were physically disabled, and point to testimony that most able-bodied men who applied for PCO positions withdrew their applications because

they found the pay to be too low to support a family. Of the dozen able-bodied men who accepted work as a PCO during the twenty-year period presented to the court, the great majority worked on a temporary basis while waiting for openings on the police force and the balance were receiving military pensions. Plaintiffs argue that disabled men were equated with women on the local job market and that the PCO position has been and still is regarded as a woman's job.

We first note it is difficult to say whether the city is arguing that near-perfect diversity between the sexes in the classes compared is necessary to state a claim under the Equal Pay Act, or whether it argues that the sexual diversity within the classes compared in this case was such that the district court's finding of discrimination was clearly erroneous. Accordingly, we consider each of these arguments in turn.

■ While the contention that near-perfect diversity between the classes compared is required to state a claim under the Act receives some support from the legislative history,[10] the text of the Act—which necessarily defines the elements of a claim—gives no indication of such a requirement. As discussed in Part II of this opinion, a claim under the Act is stated when the employee alleges (1) that his or her employer is subject to the Act; (2) that he or she performed work equal to that performed by an employee of the opposite sex in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) that he or she was paid less than the employee(s) of the opposite sex providing the basis for comparison. *Jones v. Flagship Int'l,* 793 F.2d 714, 722–23 (5th Cir.1986); *see* 29 U.S.C. § 206(d)(1). Sexual diversity within the classes compared simply does not enter into the elements of a claim under the Act.

Moreover, it is clear under the case law interpreting the Act that perfect diversity is not required. *See, e.g., Corning Glass Works,* 417 U.S. at 208, 94 S.Ct. at 2234; *American Bank of Commerce,* 447 F.2d at 421. For example, the Supreme Court in *Corning Glass Works,* rejected the idea that a few women among the higher paid group would negate an Equal Pay Act claim: "To permit the company to escape that [equal pay] obligation by agreeing to allow some women to work on the night shift at a higher rate of pay as vacancies occurred would frustrate, not serve, Congress' ends." 417 U.S. at 208, 94 S.Ct. at 2234; *see American Bank of Commerce,* 447 F.2d at 421 (reaching a similar result).

■ We agree with the city that, after a certain indefinable point, the integration within each of the classes compared becomes such that any wage differential is clearly based on a factor other than sex. As the city notes, the Equal Pay Act was intended to correct sexual discrimination in the payment of wages; the Act was not intended to subject all job classification and salary plans in commerce to an inspection by the federal judiciary. But the point at which this crude statistic as to class integration indicates such integration that the differential is clearly based on a factor other than sex, like all statistics in sex discrimination cases, is a question of fact. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 340, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977) ("statistics are ... like any other kind of evidence.... their usefulness depends on all of the surrounding facts and circumstances."). In some instances the degree of integration between the classes compared may be so advanced that, when viewed against the other facts of the case, summary judgment may be appropriate.

---

**10.** Representative Goodell, sponsor of a bill similar to that ultimately enacted, provided a number of guidelines to the Act's interpretation, including the following:

First. Differences in pay that exist between women alone are not covered by this act.

Second. Differences in pay that exist between men alone are not covered by this act.

Third. Differences in pay between groups or categories of employees that contain both men and women within the group or category are not covered by this act.

109 Cong.Rec. 9209 (1963) (statement before the full House).

*E.g., Schulte v. State of New York,* 533 F.Supp. 31, 39 (E.D.N.Y.1981). Each case must, however, be evaluated according to its unique facts, and in each case the cold percentage indicating the degree of integration must be judged with a view to the ultimate question whether the differential is based on factors other than sex.

■ We now consider, under rule 52(a)'s "clearly erroneous" standard, the district court's implicit finding that the class integration in the instant case was insufficient to show that the wage differential was based on a factor other than sex. As noted above, twenty-five percent of the PCOs in the past twenty years have been men. Half of these men, however, were physically disabled. Testimony at trial indicated that every able-bodied man that accepted a PCO position worked the job on a temporary basis—while waiting for another opening on the police force or as a supplement to a military pension. The Equal Pay Act, of course, was designed to remedy sexual discrimination in the payment of wages, not discrimination against the handicapped. Given the Act's concern with the economic position of women in the labor market, Pub.L. No. 88–38, § 2, 77 Stat. 56 (1963), see *supra* Part II, the trial judge was entitled to take into account testimony that handicapped men were in the same position as women in the local job market. Viewing the record as a whole, we cannot hold "clearly erroneous" the lower court's finding that the degree of sexual integration in the relevant classes was insufficient to establish that the wage differential was based on a factor other than sex.

## V.

The city's final point of error on appeal attacks the district court's methodology in awarding damages to both male and female plaintiffs.[11] As previously noted, the district court held that the predominantly male FCOs were paid more than the predominantly female PCOs and that sex pro-

vided a basis for the differential. Thus, the female PCOs were entitled to compensation under the Equal Pay Act. The court went on to hold, however, that because the three male PCO plaintiffs were paid less than the sole female FCO, they too were entitled to compensation under the Act. The city criticizes this "computerized type of match-up" as a distortion of the Act that could, in certain hypothetical situations, have dangerous repercussions. The city argues, in essence, that the fortuitous presence of a single woman among the predominantly male FCOs should not subject it to liability to male plaintiffs when the underlying claim is sexual discrimination against women.

The plaintiffs respond that the city's argument is based upon hypothetical situations not before this court and which this court need not decide. The district court determined that PCOs had been discriminated against as a class, and then had to fashion individual remedies pursuant to the "broadly remedial" purposes of the Act. *Corning Glass Works,* 417 U.S. at 208, 94 S.Ct. at 2234 ("The Equal Pay Act is broadly remedial, and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve").

■ The city presents a narrow argument on appeal; rather than criticize the district court's exercise of its remedial powers as such, the city takes issue with the theory used by the district court to arrive at its award of damages to the handicapped male plaintiffs. We agree that the district court's theory was improper. The fact that the three male plaintiffs were paid less than the sole female FCO was never asserted as a basis of liability in this case. Rather, the male plaintiffs' theory of recovery was that they "have suffered damages equal to those of the female plaintiffs in that defendant has discriminated against all plaintiffs as the class of PCOs on the basis of sex." *Peters v. City of Shreveport,* No. 83–0460, Complaint at 6 (W.D.La.

---

11. Many of the arguments raised by the city under this point of its brief are more relevant to the questions discussed under Part IV. Those

portions of the city's arguments that differ from issues discussed in that Part are examined here.

Feb. 16, 1983); *cf. Allen v. American Homes Foods, Inc.*, 644 F.Supp. 1553, 1557 (N.D.Ind.1986) (male plaintiffs, who lost their jobs due to employer's sexually-motivated decision to close predominantly female-staffed factory in which they worked, have standing under Title VII to assert injury to themselves occasioned by loss of their jobs). *But see Spaulding v. University of Washington*, 740 F.2d 686, 709 (9th Cir.) ("even where the female faculty members are able to frame a cognizable Title VII or Equal Pay Act claim, it does not allow the male [faculty members] 'to bootstrap their job grievances ... into an employment discrimination claim rooted in federal law.'") (quoting *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1281 (9th Cir.), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1979)), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984). The district court erred in awarding damages pursuant to a theory of recovery never asserted by the parties.

However, since the city has never, either in the proceedings below or before this court, taken issue with the right of the male plaintiffs to recover under the court's remedial powers should the city be found liable under the Act, we decline to raise that argument *sua sponte* at this stage of the proceedings. Having responded to the only question raised—that regarding the district court's theory as to the remedy—and with the reservations as to such theory expressed above, we move on to address the plaintiffs' cross-appeal.

## VI.

In their cross-appeal, plaintiffs present a liability question, a limitations question, and two questions concerning the district court's damages award. In view of our remand to the district court for further findings on the issue of the city's liability under the Equal Pay Act, only the liability question and, arguably, the limitations question are directly presented for review on this appeal—the damages questions being contingent upon the district court's finding of liability on remand. In order to expedite the resolution of an appeal delayed by two requests for supplemental briefing and an earlier dismissal for lack of appellate jurisdiction, however, we nonetheless address the entirety of plaintiffs' cross-appeal to eliminate the need for yet another appeal in the event that the district court does find for the plaintiffs on remand.

The first issue plaintiffs raise in their cross-appeal is whether the district court erred in refusing to order liquidated damages on the ground that the city had acted in good faith. Pointing to testimony demonstrating that the city was aware of the wage differential between FCOs and PCOs, plaintiffs argue that the city failed to carry its burden of proving that it acted in good faith. Plaintiffs also underline testimony reporting the remarks of a former PCO supervisor, testimony discounted by the district court because the supervisor was unavailable for trial, which indicate on his part intention to discriminate and bad faith in responding to plaintiffs' complaints.

The city responds, first, that the district court has wide discretion in deciding whether to award liquidated damages in a Fair Labor Standards Act case. *See* 29 U.S.C. § 260. Since the record shows that the city did not believe that sex discrimination was at issue in the PCOs' salary complaints and because it relied in good faith upon a state statute, the court below was well within its discretion in refusing to award liquidated damages.

Section 216 of Title 29 provides that an employer who violates the FLSA is liable for the unpaid wages and "an additional equal amount as liquidated damages." Section 260, however, qualifies this automatic award of liquidated damages:

[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount

thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260. This section entrusts the award of liquidated damages to the discretion of the district court at two levels. First, if the employer produces evidence that "his failure to obey the statute was both in good faith and predicated upon ... reasonable grounds," the district court has the discretion to find that the evidence supports the employer's assertion of good faith. *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468 (5th Cir.1979). Second, "even if an employer does introduce evidence supporting a 'good faith and reasonable belief' defense, the trial court may still, in its discretion, award liquidated damages." *Martinez v. Food City, Inc.*, 658 F.2d 369, 376 (5th Cir. Unit A Oct. 1981).

■ In the instant case the city's evidence that its violation was caused, in large part, by its compliance with a gender-neutral state law is probative as to its good faith. Testimony of several witnesses, as well as the minutes of the relevant city council meetings, support the district court's finding that the state law was the primary cause of the city's violation. An appellate court "has neither permission nor prerogative to reappraise the credibility of witnesses." *Olgin v. Darnell*, 664 F.2d 107, 108 (5th Cir.1981). Moreover, the district court's finding of good faith accords with its finding of no discriminatory intent on the Title VII, section 1983, and fourteenth amendment claims. We do not find that the district court committed an abuse of discretion when it refused to award liquidated damages.

## VII.

The plaintiffs further contend that the district court erred in finding that the city's violation of the Equal Pay Act was not willful, therefore not warranting an award of a third year of unpaid wages. *See* 29 U.S.C. § 255. Plaintiffs point to decisions of this court that found a willful violation whenever an employer knew that the Equal Pay Act was "in the picture" of events surrounding the complaint. *E.g., Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir.), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). Since the city knew or should have known that its conduct was in potential violation of the Equal Pay Act, its conduct was willful and the district court erred in refusing to award a third year of unpaid wages.

The city contends that our decisions interpreting section 255 of Title 29 were implicitly overruled by the Supreme Court's recent decision in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Considering a claim brought under the Federal Age Discrimination in Employment Act ("ADEA"), the Court concluded that "reckless disregard" was a more appropriate standard for willfulness. Since the conduct of city officials did not rise to the level of "reckless disregard" of the plaintiffs' rights, plaintiffs did not carry their burden of showing willfulness. Alternatively, the city argues that its decision-making officials did not know that the Equal Pay Act was "in the picture."

Our disposition of this point of error is controlled by our decision in *Salazar-Calderon v. Presido Valley Farmers Assoc.*, which concluded that "the Court's recent opinion in ... *Thurston* ... overturned our construction of 'willful' under the FLSA in ... *Jiffy June Farms, Inc.*," 765 F.2d 1334, 1345 (5th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1245, 89 L.Ed.2d 353 (1986).[12] While *Thurston*

---

**12.** The language from *Salazar-Calderon*, a FLCRA opinion authored by Judge Higginbotham, reads in context as follows:

Defendants argue that the Court's recent opinion in ... *Thurston*, which overturned our construction of 'willful' under the FLSA in ... *Jiffy June Farms, Inc.*, suggests that our interpretation [of FLCRA] in *Castillo* was too generous. We disagree. The standard for showing willful violations of the ADEA so as to trigger its liquidated damages provisions, which Congress intended to be punitive in nature, *see Thurston*, should not be applied here. As we explained in *Castillo*, the courts have construed the "intent" requirement necessary to trigger the damages provisions of the FLCRA so as to further the Act's *remedial* purposes. Our adoption of the general civil

can be distinguished on the ground that it interprets a distinct provision of a related statute,[13] *Thurston*'s rejection of *Jiffy June*'s "in the picture" standard as too broad an interpretation of the word "willful" in the ADEA argues strongly that "willful" should receive a similar interpretation in the FLSA. *See Brock v. Richland Shoe Co.*, 799 F.2d 80, 81–83 (3rd Cir.1986) (court declines to adopt *Jiffy June* as a matter of first impression because *Thurston* argues forcefully that *Jiffy June*'s standard is too broad); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 308–12 (7th Cir.1986) (*Thurston* and the legislative history of the FLSA limitations provision argue strongly against the adoption of *Jiffy June*'s "in the picture" standard). A doctrine often questioned in this circuit, *see, e.g., Hill v. J.C. Penney Co.*, 688 F.2d 370, 372 (5th Cir.1982) (Gee, J., concurring), *Jiffy June*'s "in the picture" standard was finally put to rest by *Thurston.* *See Salazar-Calderon*, 765 F.2d at 1345.

■ Applying the "reckless disregard" standard enunciated in *Thurston*, we find that the district court did not err in refusing to apply the three-year statute of limitations. Based on our review of the record, we are convinced that the district court's implicit finding that the city did not

standard for intent furthers that purpose, and we will not depart from it here.
*Salazar-Calderon*, 765 F.2d at 1345 (emphasis in original). It is unclear from the context whether the clause "which overturned our ..." is a contention of the *Salazar-Calderon* defendants or a parenthetical aside by the court. Since the question of *Thurston*'s impact on *Jiffy June* was not presented in *Salazar-Calderon*, however, it is unlikely that the panel would have reiterated an otherwise irrelevant aside of a party in the text of the opinion. That the statement appears at all in the opinion argues that the *Salazar-Calderon* panel meant to parenthetically remark on *Thurston*'s effect on *Jiffy June.*

13. The ADEA, while enacted decades after the FLSA, is also codified in Title 29 of the United States Code, mimics many of the FLSA's mechanisms, and incorporates numerous provisions of the FLSA into its operational framework.

Several circuits have held that *Thurston* did not overrule *Jiffy June. See Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1117 (4th Cir.1986); *Secretary of Labor v. Daylight Dairy Prod., Inc.*, 779 F.2d 784, 789 (1st Cir.1985); *see also Brock*

act in reckless disregard of the plaintiffs' rights was not clearly erroneous.

## VIII.

Plaintiffs submit that the law in this circuit is unclear as to whether prejudgment interest may be awarded under the Fair Labor Standards Act, and argue that the better rule is to fully compensate the injured employee by awarding prejudgment interest. *See Brennan v. City Stores, Inc.*, 479 F.2d 235 (5th Cir.1973) (awarding prejudgment interest). *But see Hill v. J.C. Penney Co.*, 688 F.2d 370 (5th Cir.1982) (refusing to award prejudgment interest).

The city distinguishes the cases relied upon by plaintiffs on the ground that those claims were brought under 29 U.S.C. § 217, whereas plaintiffs' claim, and the claims in those cases where prejudgment interest was not awarded, was brought under 29 U.S.C. § 216. *See Marshall v. Hope Garcia Lancarte*, 632 F.2d 1196, 1199 (5th Cir.1980).

■ As this court has previously noted, "our precedent is not logically consistent" regarding this question. *Id.* The reason for distinguishing between section 217 and section 216 for purposes of prejudgment interest is not readily apparent;[14] indeed,

*v. Richland Shoe Co.*, 799 F.2d 80, 81–83 (3rd Cir.1986) (though "*Thurston* does not control the case at bar because it involved the interpretation of a different statute," court declined to adopt *Jiffy June* as a matter of first impression because *Thurston* argues against such adoption); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 308–12 (7th Cir.1986) (though "the [*Thurston*] Court has left open the meaning of 'willful' in [the FLSA's limitations provision]," *Thurston* and the legislative history of the limitations provision argue that *Jiffy June*'s "in the picture" standard should not be adopted).

14. Neither section 216 nor section 217 mentions prejudgment interest. Nonetheless, "the failure to mention interest in statutes which create obligations has not been interpreted by this Court as manifesting an unequivocal congressional purpose that the obligation shall not bear interest.... [T]his Court has ... granted or denied interest on particular statutory obligations by an appraisal of the congressional purpose in imposing them and in the light of general principles deemed relevant by the Court." *Rodgers v. United States*, 332 U.S. 371, 373, 68 S.Ct. 5,

while every circuit permits prejudgment interest to be awarded under the FLSA, no circuit seems to have adopted our distinction between cases brought under sections 216 and 217.[15] Nonetheless, this panel remains bound by the distinction made by the court in *Hope Garcia Lancarte,* and we must follow our line of cases denying prejudgment interest under section 216. *Hill v. J.C. Penney Co.,* 688 F.2d 370, 375 n. 4 (5th Cir.1982); *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464, 469 (5th Cir. 1979); *Foremost Dairies, Inc. v. Ivey,* 204 F.2d 186, 190 (5th Cir.1953). Accordingly, we find no error in the district court's denial of prejudgment interest.

### IX.

■ The final question plaintiffs raise in their cross-appeal is whether the district court erred in finding that plaintiffs did not establish discriminatory intent because "sex was not a significant factor in the employer's decision to pay the FCOs approximately 40 percent more than PCOs." The district court's finding prevented plaintiffs from recovering under Title VII, section 1983, and the fourteenth amendment. For the reasons set out in Part VI of this

opinion, we rule that the district court's finding was not clearly erroneous.

### X.

The judgment of the district court is REVERSED and REMANDED for further proceedings not inconsistent with Part III of this opinion.

'7, 92 L.Ed. 3 (1947); *see also General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 651–52, 103 S.Ct. 2058, 2060, 76 L.Ed.2d 211 (1983) (according to Court's common-law standard, "prejudgment interest was generally awarded from the date on which damages were liquidated"). The congressional purposes relevant to the award of prejudgment interest are the same with respect to sections 216 and 217. *See* S.Rep. No. 145, 87th Cong., 1st Sess., *reprinted in* 1961 U.S. Code Cong. & Admin.News 1620, 1658–59 (section 217 of Act amended to allow Secretary to bring suit absent employee request in order to "establish a more effective method of enforcing an employee's rights"). The purposes, therefore, of both the damages action under section 216 and the "restitutionary injunction under section [2]17 are to make whole employees who have unlawfully been deprived of wages and to eliminate the competitive advantage enjoyed by employers who have illegally underpaid their workers." *Donovan v. Sovereign Sec., Ltd.,* 726 F.2d 55, 58 (2d Cir.1984). For an analysis of policy reasons supporting an award of prejudgment interest under the FLSA, see generally *id.* at 57–58. For an analysis of economic reasons, see Judge Posner's opinion in *Heiar v. Crawford County,* 746 F.2d 1190, 1201–03 (7th Cir.1984), *cert. denied,*

472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985).

**15.** *See, e.g., Ford v. Alfaro,* 785 F.2d 835, 842 (9th Cir.1986) (abuse of discretion, ordinary, not to include prejudgment interest when no liquidated damages); *Secretary of Labor v. Daylight Dairy Prod.,* 779 F.2d 784, 789 (1st Cir. 1985); *Donovan v. Sovereign Sec., Ltd.,* 726 F.2d 55, 57–58 (2nd Cir.1984); *Heiar v. Crawford County,* 746 F.2d 1190, 1201–03 (7th Cir.1984) (Posner, J.) (ADEA case), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); *O'Donnell v. Georgia Osteopathic Hosp., Inc.,* 748 F.2d 1543, 1552 (11th Cir.1984) (ADEA case); *Donovan v. Pointon,* 717 F.2d 1320, 1323 (10th Cir.1983), *cert. denied,* 466 U.S. 934, 104 S.Ct. 1902, 80 L.Ed.2d 453 (1984); *Cline v. Roadway Exp., Inc.,* 689 F.2d 481, 489 (4th Cir. 1982) (ADEA case); *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1101–03 & n. 9 (8th Cir.1982) (ADEA case) ("Courts have ruled that the FLSA authorizes a grant of prejudgment interest if no liquidated damages are awarded"); *Hodgson v. Wheaton Glass Co.,* 446 F.2d 527, 534–35 (3d Cir.1971); *McClanahan v. Mathews,* 440 F.2d 320, 324–26 (6th Cir.1971).