Cleatrice B. PRICE, Plaintiff–Appellant,

v.

**LOCKHEED SPACE OPERATIONS CO., and Steven Kerasotis, Defendants–Appellees.**

No. 87–3574.

United States Court of Appeals, Eleventh Circuit.

Oct. 7, 1988.

Cleatrice B. Price, Rockledge, Fla., pro se.

James Sweeting, III, Sanford, Fla., for plaintiff-appellant.

James M. Blue, and Jesse S. Hogg, Hogg, Allen, Ryce, Norton & Blue, Coral Gables, Fla.

Laurence Fedak, Lockheed Space Operations Co., Titusville, Fla., for defendants-appellees.

Before TJOFLAT, VANCE and COX, Circuit Judges.

COX, Circuit Judge:

Cleatrice B. Price filed suit against Lockheed Space Operations Company (LSOC) and Steven Kerasotis, her employer and its supervisor, alleging discrimination on the basis of sex and race in violation of 29 U.S.C. § 206(d)(1) (1978),[1] 42 U.S.C. § 1981 (1981),[2] and 42 U.S.C. §§ 2000e to 2000e–17 (1981).[3] Following the plaintiff's presentation of evidence to the jury, the district court directed a verdict in favor of both defendants. Ms. Price appeals that determination, arguing that she presented substantial evidence from which discriminatory treatment could be inferred, that the district court usurped the traditional function of the jury by judging the credibility of the witnesses presented, and that the defendants' motion for a directed verdict failed to state with sufficient specificity the grounds upon which it was based. We find that the evidence, when viewed in the light most favorable to Ms. Price, was sufficient to present an Equal Pay Act case for the jury's determination. Accordingly, the judgment below is affirmed in part, reversed in part, and remanded for further proceedings.

## I. EQUAL PAY ACT

Cleatrice Price became employed as a Publications Writer Senior in the Operations and Maintenance Department of LSOC in early January, 1984.[4] Publications Writers at LSOC process Operations and Maintenance Instructions. Specifically, Ms. Price and the other writers in her department drafted step-by-step instructions on the operation of certain equipment and systems necessary to the pre-launch processing of the space shuttles, editing and incorporating changes as suggested by the engineers charged with implementing the instructions. Ms. Price was one of three females in the twenty-five person department, and was the only black. Steven Kerasotis supervised the department.

LSOC initially classified Cleatrice Price in pay grade three[5] and compensated her at the rate of $398.00 per week, the same salary she had received from United States Boosters, Inc., her previous employer. The other twenty-four writers in the Operations

---

**1.** The Equal Pay Act provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1) (1978).

**2.** "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981 (1981).

**3.** No issues arising from appellant's Title VII claim are presently before this court for review. Any issues which may have been raised were expressly abandoned during oral argument.

**4.** Ms. Price was at the time of trial working as a Technical Analyst in the Thermal Protection Systems Engineering Group. In April, 1985, she requested and received a transfer from the Operations and Maintenance Department.

**5.** LSOC utilizes a multi-grade classification system as part of its compensation plan. Each grade within the system contains several job titles and a range of salaries.

and Maintenance Department were classified in higher pay grades under different job titles and were paid greater salaries. During the first nine months of her employment, LSOC increased Ms. Price's pay grade classification to grade four, and raised her salary to $464.00. Although this represented the greatest percentage wage increase and one of the highest actual dollar increases in the department, Ms. Price was still receiving less compensation than twenty-two of her co-writers, twenty of which were male.

■ Ms. Price challenges the district court's determination that the evidence presented during her case-in-chief was insufficient to fashion an Equal Pay Act case for the jury's consideration. A motion for directed verdict should be granted only when there can be but one reasonable conclusion as to the verdict. *Dempsey v. Auto Owners Ins. Co.,* 717 F.2d 556, 559 (11th Cir.1983). In determining whether Ms. Price's evidence was sufficient to withstand the defendants' motion,[6] we have viewed all of the evidence, together with all logical inferences flowing from the evidence, in the light most favorable to Ms. Price. *Boeing Company v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc).[7] The credibility of the witnesses was not considered, however; that evaluation is for the jury, not the court. *Neff v. Kehoe,* 708 F.2d 639, 644–45 (11th Cir.1983).

## A. PRIMA FACIE CASE

■ In order to make out a *prima facie* case under the Equal Pay Act, a plaintiff must demonstrate "that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan,* 417

U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed. 2d 1 (quoting 29 U.S.C. § 206(d)(1)). This burden is fulfilled by showing discrimination in terms of pay vis-a-vis one employee of the opposite sex. *Brock v. Georgia Southwestern College,* 765 F.2d 1026, 1033 n. 10 (11th Cir.1985). The evidence presented by Ms. Price establishes a *prima facie* Equal Pay Act case, and this is conceded by the defendants.

## B. LSOC'S AFFIRMATIVE DEFENSE

■ Once the plaintiff has established a *prima facie* case under the Equal Pay Act, the burden shifts to the employer to prove that the difference in pay is justified by one of the four exceptions established by Congress in the Act: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any factor other than sex. *Corning Glass Works,* 417 U.S. at 196, 94 S.Ct. at 2229; *see* 29 U.S.C. § 206(d)(1). These exceptions are affirmative defenses on which the employer bears the burden of proof. *Corning Glass Works,* 417 U.S. at 196, 94 S.Ct. at 2229. LSOC seeks to justify the pay disparity on the fourth defense—a differential based on a factor other than sex.

In 1983, NASA consolidated twelve service contracts for the pre-launch processing of the space shuttles into a single contract, and sought bids for the performance of this unified Shuttle Processing Contract. NASA was concerned that the intensely competitive nature of the bid process would induce bidders to contemplate wage reductions for those employees of the twelve separate contractors that would have to be retained by the successful bidder for performance of the contract. It, therefore, cautioned offerors that instances of lowered compensation might be considered a lack of sound business judgment. LSOC in response pledged that it would not diminish

---

**6.** The appellant's contention that the motion for directed verdict was vague and ambiguous need not detain us long. Our review of the record leads us to conclude that the motion was specific enough to draw into question the sufficiency of the evidence of sex and race discrimination. It stated with clarity how the plaintiff's evidence was deficient; nothing more is required by Fed. R.Civ.P. 50(a).

**7.** This court has adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc).

the salaries of incumbent employees. It was LSOC's bid strategy to effectively address NASA's concern, and yet submit the lowest possible bid by paying any incumbent employee hired by it precisely the same salary paid to that employee by the previous employer. LSOC was awarded the Shuttle Processing Contract in September, 1983.

LSOC's compensation plan provided for the gradual elimination of the inevitable inequities that it anticipated would result from the merging of multifarious salary structures. According to the plan, a portion of the funds set aside for periodic salary adjustments was to be used to correct the resulting inequities. These funds were separate and apart from the portion earmarked for general merit pay increases.

By February, 1984, LSOC had transitioned in all of the employees of the twelve contractors previously involved in the prelaunch processing operation at the same rate of pay they were receiving from LSOC's predecessors, except for a smattering of top level officials and certain critical skills employees. Included among these approximately four thousand incumbent employees was Cleatrice Price, a Technical Writer at United Space Boosters, Inc. Her final weekly salary at United Space Boosters was $398.00; accordingly, she was hired by LSOC as a technical writer and paid a salary of $398.00 per week. This was consistent with LSOC's commitment to NASA.

The appellees answered Ms. Price's complaint by asserting affirmatively that her salary was unequal solely because of the compensation plan mandated by LSOC's commitment to NASA, not her sex. On appeal, their argument in support of the trial court's ruling as it relates to the Equal Pay Act claim is two-fold: (i) the wage structures inherited by LSOC justified the pay disparity since prior salary is necessarily a factor other than sex, *see Kouba v. Allstate Insurance Company*, 691 F.2d 873 (9th Cir.1982), and, in the alternative, (ii) the undisputed evidence offered to establish the affirmative defense is so compelling that the articulated factor

other than sex was proved as a matter of law.

▓ Initially we note that the appellees' reliance on *Kouba* is misplaced. In *Glenn v. General Motors Corp.*, 841 F.2d 1567 (11th Cir.1988), a panel of this court rejected the very argument that LSOC advances here. *Kouba* does not stand for the proposition that prior salary alone can justify pay disparity. Rather, the Ninth Circuit held that "the Equal Pay Act does not impose a *strict prohibition* against the use of prior salary." An employer will have violated the Act, according to the *Kouba* Court, if other business reasons do not reasonably explain the utilization of prior salary. *Glenn*, 841 F.2d at 1571 n. 9 (quoting *Kouba*, 691 F.2d at 878 (emphasis added)). Moreover, to accept the appellees argument that prior salary alone is a *per se* factor other than sex would require this court to contravene Congress' intent and perpetuate the traditionally unequal salaries paid to women for equal work. This we refuse to do.

▓ We also reject the appellees' alternative argument; the evidence offered to establish the reason for the wage disparity, though it remained undisputed, was not so compelling that it necessarily rebuts the inference of discrimination raised by Ms. Price's *prima facie* case. Instead, the evidence *in toto* presents two competing inferences, that the appellees discriminated on the basis of sex, and that there existed a reason other than sex for the continuing wage disparity. It is the function of the jury as the traditional finder of facts, and not the court, to resolve the conflict between these competing inferences. *See Boeing Co. v. Shipman*, 411 F.2d at 375.

Moreover, one logical conclusion that could be drawn from the evidence is that LSOC acted too slowly in rectifying the admittedly inequitable salary paid to the plaintiff. Ms. Price maintained this contention as the central theme of her case through her pleadings, the pretrial document, and her opening argument at trial. Although she received salary increases greater than many of her coemployees, the evidence proved that Ms. Price's salary re-

mained less during the fifteen months that she worked in the Operations and Maintenance Department than twenty-two of her colleagues, including four males ranked below her in terms of job performance. When considered in conjunction with the inference of discrimination created by the *prima facie* case, this evidence could reasonably lead a jury to reject LSOC's articulated factor other than sex. Accordingly, Ms. Price was entitled to have the jury decide her Equal Pay Act claim.

## II. § 1981

█ § 1981 can be violated only by purposeful discrimination. *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 382–91, 102 S.Ct. 3141, 3145–50, 73 L.Ed.2d 835 (1982). The district court held that the plaintiff failed to produce sufficient evidence of racial discrimination, circumstantial or otherwise, to present a genuine issue of fact for the jury's determination. We agree.[8]

█ Ms. Price sought to meet her burden of showing discriminatory intent solely through evidence of certain statements made by Mr. Kerasotis in response to allegations by Ms. Price of improper racial conduct. Mr. Kerasotis stated during a private meeting with the plaintiff that he had many friends who were black, that some of them had eaten dinner in his home with his family, and that he had been brought up on welfare. These statements, though in part tasteless, are not so egregious that reasonable minds could infer racial animus from them.

## III. CONCLUSION

Based on the foregoing analysis and conclusions, the order of the district court granting appellees' motion for directed verdict is REVERSED insofar as it relates to the appellant's Equal Pay Act claim, and

REMANDED to the district court for proceedings consistent with this opinion. We AFFIRM the district court's decision in all other respects.

---

8. We pause at this point to summarily reject Ms. Price's contention that the district judge must have resolved issues of credibility against her witnesses since he adopted in large part the arguments proffered by the defendants in support of their directed verdict motion. This assertion, which is relevant only to the § 1981 claim because of our other holdings, is not supported by the record. Indeed, our review of the district court's ruling indicates that the judge's factual findings were based on the evidence precisely as it was presented by the plaintiff's witnesses.