Sherry **HOFMISTER** and Linda **Trigg,** by and on Behalf of All Other Similarly Situated Mississippi State Department of Health Facility Surveyors II, Plaintiffs,

v.

**MISSISSIPPI STATE DEPARTMENT OF HEALTH, Defendant.**

No. Civ.A. 3:96–CV756WS.

United States District Court, S.D. Mississippi, Jackson Division.

March 9, 1999.

Dale Danks, Jr., Barbara Jean Steadman, Danks, Coxwell, Simon & Teeuwissen, Jackson, MS, for plaintiffs.

Rickey T. Moore, Office of the Attorney General, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

This case went forward as a bench trial on February 19, 1999, and was carried over to February 22, 1999. This court now is prepared to issue its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.[1]

The plaintiffs, Sherry Hofmister and Linda Trigg, brought this lawsuit against the Mississippi Department of Health pursuant to the Equal Pay Act of 1963, Title 29 U.S.C. §§ 201–219 (hereinafter the EPA), which requires that all persons performing equal work must receive equal pay, unless a difference in pay is justified by a consideration other than gender. *See* Title 29 U.S.C. § 206(d). The private enforcement provision of the Fair Labor Standards Act (hereinafter "FLSA"), of which the EPA is a part, provides that "[a]n action to recover the liability prescribed ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *See* Title 29 U.S.C. § 216(b). The term "employer" is defined in the FLSA to include "a public agency," Title 29 U.S.C. § 203(d), which is in turn defined as "the government of a State or political subdivision thereof" and any agency of a State. *See* Title 29 U.S.C. § 203(x). Finally, the term "employee" is defined to include "any individual employed by a State, political subdivision of a State, or an interstate governmental agency." *See* Title 29 U.S.C. § 203(e)(2)(C). This court has jurisdiction over a claim under the Equal Pay Act of 1963 pursuant to Title 29 U.S.C. §§ 206(d) and 216, and pursuant to Title 28 U.S.C. § 1343(4)[2].

## I. FINDINGS OF FACT

Sherry Hofmister and Linda Trigg (hereinafter the "plaintiffs") are registered records administrators employed by the Mississippi State Department of Health (hereinafter "MDH"), the defendant in this

---

1. Rule 52(a) provides in pertinent part that, "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; ...".

2. Title 28 U.S.C. § 1343(a)(4) provides that, "the district court shall have original jurisdiction of any civil action ... (4)[t]o recover damages or to secure equitable or other relief under any Act Congress providing for the protection of civil rights, including the right to vote."

cause. They are each classified in the position of Health Facility Surveyor II, a category of employees consisting of 10 women and 8 men. The salary range for this position begins at $26,736.00 and is capped at $40,052.00 per year. Hofmister and Trigg currently are paid $35,022.00 and $34,834.00 per year respectively, each having been employed with the State of Mississippi for approximately twenty-five years. Each of the plaintiffs began her career as a Medical Records Consultant with the Mississippi Department of Health in 1974 and served in this capacity until 1979 when the position of Health Facility Surveyor II (hereinafter "HFS II") was created. Personnel from eight separate disciplines were grouped together in 1979 under the HFS II classification. These disciplines included: (1) registered nurses; (2) registered pharmacists; (3) registered record administrators; (4) registered dietitians; (5) masters level social workers; (6) laboratory technologists; (7) administrative specialists; and (8) fire safety specialists.

On April 1, 1991, the Mississippi State Personnel Board separated the discipline of registered nurses from the other disciplines, creating the classification of Nurse III with a 17.5% increase in salary.[3] Currently, the salary range for the Nurse III classification begins at $31,536.00 and is capped at $47,232.00. There are 2 men and 18 women employed in the classification of Nurse III, while 10 men and 9 women comprise the classification of HFS II.

The plaintiffs contend that the men in the Nurse III classification perform the same work as the women in the HFS II classification, but are paid in accordance with a significantly higher salary range. Plaintiffs note that the two males in the classification of Nurse III, Gary Boise and Roger Cole, both registered nurses, earn $34,834.00 and $33,143.00 per year respectively. Boise, say plaintiffs, was hired in 1996, while Cole was hired in 1999. At the same time, say plaintiffs, Sandra Talbot, a social worker, was hired in January of 1999 as an HFS II, and is paid only $29,553.96 per year.[4]

Plaintiffs also contend that persons employed in the classification of Nurse III do not actually perform the duties outlined in the Nurse III Duties Statement, namely, dispense prescription medicines, diagnose diseases, supervise nursing personnel, record observations in medical records, or develop patient care plans. Plaintiff Linda Trigg, however, agreed that registered nurses use these enumerated skills to conduct surveys and to report their observations. Plaintiff Sherry Hofmister agreed on cross-examination that all the duties enumerated in the Duties Statement of the Nurse III classification pertain to the review of documents and observation of health care facilities operations, rather than to actually providing the enumerated health care services.

According to MDH, most of the Mississippi survey agency's workload is long-term care (nursing homes).[5] Federal regulations[6], says MDH, require that surveys of health care facilities be conducted, and

3. According to MDH, registered nurses were reclassified in order to enable the State of Mississippi to be more competitive in the market for persons with registered nursing skills.

4. Additionally, plaintiffs submit the names and salaries of the following female employees currently employed in the classification of HFS II: Dion H. King, a social worker, $29,553.00; Linda Faye Pate, an administrative specialist, $29,407.00; Judy Hughes, an administrative specialist, $29,407.00; Regina Glass, a laboratory technician, $29,553.00;

Carolyn Brooke Brown, $30,764.00; and Cheryl Fowler, $29,407.00. Plaintiffs agree that no one employed in the classification of HFS II is a registered nurse.

5. According to Vanessa K. Phipps, Director of the Mississippi Department of Health—Health Facility Survey Division, surveying nursing homes comprises 90–95% of the Mississippi survey agency's workload.

6. These federal regulations are discussed in greater detail below.

that resident care observations at nursing homes "should be made by those persons who have the clinical knowledge and skills to evaluate compliance." [7] Thus, says MDH, the purpose of the survey team is to evaluate compliance with federal regulations, and not to perform health care services.

Furthermore, says MDH, at least one member of the long-term care facility survey team must be a registered nurse.[8] According to Vanessa K. Phipps, Director of the Mississippi Department of Health—Health Facilities Survey Division, Mississippi's survey agency employs a team concept when conducting surveys of health facilities. Phipps notes that the teams conducting long-term facility surveys are comprised of persons trained in certain of the disciplines encompassed by the HFS II classification, as well as registered nurses employed in the classification of Nurse III. However, according to Phipps, most surveys may be conducted by a registered nurse alone because medical records administration is no longer a part of the long-term health facility survey.

In addition, says Phipps, federal regulations require that certain functions be performed only by a registered nurse. Referring to exhibit D-1, Phipps notes that only the registered nurse is permitted to make observations of and report on a nursing home resident's genitals, rectal area, and a female resident's breasts. Phipps further notes that the registered nurse is the only member of a survey team who may conduct body audits, evaluate decubitis ulcers, the sores formed from prolonged lying down, and monitor medication paths. Notwithstanding Sherry Hofmister's claim that she is able to monitor medications paths, Phipps' testimony establishes that Hofmister's efforts in this area would be fruitless since this task is one which must be performed by a registered nurse.

Finally, Phipps points out that the plaintiffs Sherry Hofmister and Linda Trigg are not registered nurses; have not participated in a long-term health care facility surveys for ten years; and have not taken the merit system examination necessary to qualify for such participation[9]. Phipps contends that the plaintiffs have declined to take the examination. The plaintiffs dispute this contention, claiming that they have not been given the opportunity to take the examination.

MDH claims that the Nurse III classification was created in order to enable the State of Mississippi to offer higher wages to registered nurses, wages more closely aligned with the salaries being paid to registered nurses in the private sector. According to the testimony of Patricia H. Klar, personnel director for MHD, her research revealed that MDH was losing its registered nurses faster than new registered nurses could be recruited, and that salary was the primary reason. So, according to Klar, salaries for registered nurses were raised by a factor of 17%. Klar also stated that labor market considerations, and not gender, influenced the decision to reclassify registered nurses and increase their salaries.

The MDH further claims that it has made many efforts over the past ten years to obtain realignment, reclassification or salary increases for employees in the HFS II classification. According to Klar, the attempts to reclassify the HFS II position, and particularly the Job Analysis Study prepared in 1996, were rejected by the Mississippi State Personnel Board as unjustified under the standard established by

---

7. *See* exhibit D-1, p. 27, Survey Procedures for Long Term Care Facilities.

8. *See* exhibit D-1, p. 28.

9. MDH points to Section 4009 of the document labeled exhibit D-2 which is entitled "Program Administration and Fiscal Management." According to this document, "SA (survey agency) personnel must be under a merit system which meets Federal standards."

the Board.[10] Furthermore, says Klar, the 1996 study concluded that registered records administrators would suffer a salary cut if that job title was separated from the HFS II classification as the registered nurses has been in 1991. Thus, Klar says that the classification of HFS II was retained for all the disciplines it currently encompasses so that no salary cuts would be suffered by anyone.

So, according to MDH, Mississippi conducts investigations or surveys of medical facilities for compliance with federal regulations governing those facilities receiving Medicare payments, using survey teams composed of qualified persons of the HFS II classification, plus registered nurses who are employed in the classification of Nurse III. MDH notes that currently it has no registered pharmacists or physician assistants, and that medical technologists are becoming increasingly difficult to recruit. Thus, according to MDH, the registered nurse position is essential for the overall performance of Mississippi's survey agency.

## II. *CONCLUSIONS OF LAW*

### a. *Shifting Burden Under The Equal Pay Act*

■ To establish a prima facie case under the EPA, the plaintiffs must show: (1), that the MDH is subject to the Act; (2), that they, the plaintiffs, performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3), that they were paid less than the employee of the opposite sex providing the basis of comparison. *Chance v. Rice University*, 984 F.2d 151, 153 n. 9 (5th Cir.1993), citing *Jones v. Flagship International*, 793 F.2d 714, 722–23 (5th Cir.1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). This burden is satisfied upon showing that the overall comparison of the work reveals that a substantial equality of skill, effort, responsibility, and working conditions exists. *See Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir.1981), citing *Shultz v. Wheaton Glass Co.*, 421 F.2d 259, 265 (3rd Cir.), *cert. denied*, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970).

■ If the plaintiffs prove by a preponderance of the evidence that they are paid less than appropriate male comparators for equal work on jobs, the performance of which require equal skill, effort, and responsibility and which are performed under similar working conditions, then the defendant cannot avoid liability unless it is able to show that any circumstance of unequal pay occurred as the result of: (1), a seniority system; (2), a merit system; (3), a system measuring salary by quality or quantity of production; or (4) that the unequal pay is based on any factor besides gender. *See* Title 29 U.S.C. § 206(d)(1); *Chance v. Rice University*, 984 F.2d, at 153.[11]

In the instant case, this court finds that the plaintiffs have failed to demonstrate

10. Plaintiffs contend that the 1996 Job Analysis Study, or "desk audit" of the HFS II classification was unfair because it did not also include the Nurse III classification. MDH responds that the desk audit of the HFS II classification was conducted in order to determine whether any of the encompassed disciplines could be reclassified and given pay raises. The Nurse III classification was not included, according to MDH, because the decision to reclassify registered nurses for pay purposes had been made in 1991 and was approved by the State Personnel Board.

11. The shifting of burdens under the EPA and Title VII are not the same. The EPA addresses the "classic" sexually discriminatory practice of unequal pay for equal work, while Title VII covers a broader range of discriminatory pay practices. Title VII prohibits employers from paying women less than the worth of their jobs simply because they are women. Moreover, unlike the EPA, Title VII requires plaintiffs to prove that their employer acted with discriminatory intent. *See Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1131–32 (5th Cir.1983); and, generally, *County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981); *see also Peters v. City of Shreveport*, 818 F.2d 1148, 1153 (5th Cir. 1987), *cert. dismissed*, 485 U.S. 930, 108 S.Ct. 1101, 99 L.Ed.2d 264 (1988).

that they perform work substantially equal to the male job comparators they have selected. Additionally, this court finds that the two male job comparators named in the instant case are improperly selected. The two males employed in the Nurse III classification do not perform work which requires equal skill, effort, and responsibility as that of the plaintiffs, even if it is shown that the work is performed under similar working conditions. Thus, the plaintiffs have failed to establish a prima facie case. Nevertheless, even if the plaintiffs had established a prima facie case, the MDH has shown that there are factors other than gender which account for any disparity in pay and benefits between the plaintiffs and there male job comparators they have selected.

### b. *Prima Facie Case Analysis*

#### (1) Equal Work

 The EPA proscribes discrimination "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex in such establishment for 'equal work' on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." Title 29 U.S.C. § 206(d)(1). A showing of "equal work" requires only that the plaintiff prove that the "skill, effort and responsibility" required in the performance of the jobs compared are substantially equal. *See Peters v. City of Shreveport*, 818 F.2d 1148, 1155 (5th Cir.1987), *cert. dismissed*, 485 U.S. 930, 108 S.Ct. 1101, 99 L.Ed.2d 264 (1988) [12], citing *Hodgson v. Behrens Drug Company*, 475 F.2d 1041, 1049 (5th Cir.1973) (adopting "substantially equal work" test). Once the plaintiff shows that he or she is paid less

than an employee of the opposite sex for substantially equal work, the burden of proof "shifts to the employer to show that the differential is justified under one of the Act's four exceptions." *Peters v. City of Shreveport*, 818 F.2d at 1153.

 The plaintiffs have shown that employees in both the classifications of HFS II and Nurse III may be part of a survey team for long-range care facilities, responsible for the same reports regarding certification under federal law. However, plaintiffs admit that a long-range care facility survey team does not include employees of the plaintiff's discipline—registered records administrators. Plaintiffs do not dispute the MDH assertion that only registered nurses can conduct body audits, evaluate decubitis, and monitor medication paths. The testimony of Vanessa Phipps also established that registered nurses monitor and evaluate certain activities of the long-term care facility, including the dispensing of prescription medicines, the diagnosing of diseases, the supervising of nursing personnel, the recording of observations in medical records, and the developing of patient care plans. These are things that, according to Phipps, the registered nurse must do. Persons in the plaintiffs' discipline, says Phipps, do not perform any of these functions and are not even present when a long-term care facility survey is conducted.

Based on the forgoing, this court is not persuaded that the plaintiffs have established that they perform substantially equal work requiring equal skill and responsibility with those persons employed in the Nurse III classification. Plaintiffs argue that because the registered nurses do not actually perform health care services, they are not doing anything substantially different from the plaintiffs and, consequently, that the work of registered

---

12. *Peters v. City of Shreveport* was abrogated by the United States Supreme Court decision of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). However, Section 107 of the Civil Rights Act of 1991, Title 42 U.S.C.A. § 2000e—2(m), overruled the holding of *Price Waterhouse*. *See Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 1489, 128 L.Ed.2d 229 (1994) (§ 107 responds to *Price Waterhouse v. Hopkins*, ..., by setting forth standards applicable in "mixed motive" cases).

nurses is the same as that of the plaintiffs. This court does not agree and finds from the proof presented that registered nurses possess skills and abilities not possessed by the plaintiffs, particularly with regard to the above-enumerated tasks. Moreover, as noted by MDH, federal regulations would not permit monitoring and evaluation of these clinical tasks by anyone lacking the skills and requisite licenses to perform them.

Therefore, this court finds that the plaintiffs have failed to establish that they perform "equal work" requiring the same skill, effort and responsibility as those persons employed in the Nurse III classification. However, as shall be discussed below, even if the plaintiffs had shown that they were being paid less than members of the opposite sex for equal work, this court is convinced that MDH has met its burden of showing that any pay differential was based on factors other than gender.

### (2) Male Comparator Improperly Selected

■ In order to establish a prima facie case, the plaintiffs must show that they were paid lower wages than a male comparator for equal work, and the male job comparator must be properly selected. *See Strag v. Board of Trustees*, 55 F.3d 943, 950 (4th Cir.1995). The plaintiffs have presented no authority to justify their choosing male Nurse III employees as proper male job comparators. By choosing male job comparators from the Nurse III classification, the plaintiffs are making a comparison of one classification composed of males and females with another classification of employees also composed of males and females.

This court asked the plaintiffs for authority supporting this method of comparison. The plaintiffs responded with a quote from *Price v. Lockheed Space Operations Company*, 856 F.2d 1503, 1505 (11th Cir. 1988) (prima facie case is established if plaintiff can show that at least one employee of the opposite sex received higher pay for equal work). However, *Price* addresses an EPA claim by a plaintiff in the same job classification as the employees of the opposite sex. So, the facts in *Price* are not congruent with the facts of the instant case. Plaintiffs have shown nothing to support comparing one employment class composed of men and women with another class of employees also composed of men and women when establishing a prima facie case under the EPA.

The legislative history of the EPA shows that differences in pay between groups or categories of employees that contain both men and women within each group or category are not covered by the EPA.[13] This certainly must be true where the job category providing the male job comparator requires training and skills not possessed by the plaintiff(s). For instance, in the *Strag* case, the Fourth Circuit cited its decision in *Soble v. University of Maryland*, 778 F.2d 164 (4th Cir.1985), where the plaintiff, a female professor classified similarly to other males at the university, selected male job comparators from other departments. The Fourth Circuit upheld the district court's rejection of this com-

---

**13.** *See* Congressional Record, Vol. 109, Part 7 (88th Congress, 1st Session) Pages 8866, 8892, 8913–8917, 9194–9218, 9761–9762, 9854 and 9941. The following colloquy is taken from the debate conducted on May 17, 1963 in the Senate, on May 23, 1963 in the House of Representatives, and on May 28, 1963 when the Senate accepted the House passed Bill establishing the EPA:

Mr. GOODELL. Mr. Chairman, here are examples and general guidelines as to the intent of Congress in enacting H.R.6060, the equal-pay-for-women bill:

First. Differences in pay that exist between women alone are not covered by this act. Second. Differences in pay that exist between men alone are not covered by this act.

Third. Differences in pay between groups or categories of employees that contain both men and women within the group or category are not covered by this act.

Fourth. Only those jobs that are the same and normally related shall be compared.

parison, finding that the other departments in the university required distinctive degrees and skills not possessed by the plaintiff, thus "foreclosing any comparison Soble (the plaintiff) might make." *Strag,* 55 F.3d at 948. In *Strag* the plaintiff was comparing herself to male teachers equally ranked as assistant professors who had degrees in dentistry, while the plaintiff's academic background was social work. *Id.* The *Strag* Court concluded that the plaintiff had not established a prima facie case because she had failed to select a proper male job comparator.

The Fifth Circuit has not addressed directly the proper selection of a male job comparator. The Fifth Circuit has stated however, "after a certain indefinable point, the integration within each of the classes compared becomes such that any wage differential is clearly based on a factor other than sex." *Peters v. City of Shreveport,* 818 F.2d at 1164. This court believes that this indefinable point has been reached in the instant case. The plaintiffs are employed in a classification consisting of 10 men and 9 women. The plaintiffs make no claim that the men employed in the classification HFS II are being paid more than the women employed in this classification. In fact, the plaintiffs admit that they are the highest paid employees in the classification of HFS II. Meanwhile, the classification of Nurse III has been, and currently is almost exclusively occupied by women who are registered nurses. Only two men presently are employed as registered nurses by the MDH, and they have only recently been hired (in 1996 and 1999). There is no contention that these men are paid more generously than the women employed in the Nurse III classification. Just as the male job comparators in the *Soble* case who had dentistry degrees, these two males have degrees in nursing, are registered nurses, and they have skills not possessed by the plaintiffs. The degrees and skills of the male job comparators in the instant case enable them to monitor and evaluate matters during the certification survey process which ·

the plaintiffs could not. Moreover, the plaintiffs do not participate in surveys of long-range care facilities. Thus, this court finds that the plaintiffs have not selected proper male job comparators in the instant case. Finally, the courts are not in the business of evaluating jobs and determining what constitutes a proper differential for unequal work. *See Hodgson v. Corning Glass Works,* 474 F.2d 226, 231 (2d Cir.1973), *aff'd sub nom., Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

So, this court finds that the plaintiffs have failed to establish a prima facie case. Specifically, they have not shown that they perform work in a position requiring equal skill, effort, and responsibility under similar working conditions as their male job comparators. Moreover, they have not selected proper male job comparators.

■ Even though this court finds that a prima facie case has not been made and the burden has not shifted to the MDH to show one of the four exceptions to liability under the EPA, the MDH has presented evidence which establishes that the pay differential between HFS II and Nurse III is based on appropriate factors other than gender. Either the plaintiffs' failure to establish a prima facie case, or the defendant's proof of one of the four exceptions to liability under the EPA, will preclude a judgment in favor of the plaintiffs in the instant case.

### c. *Analysis of the Factors Other than Gender*

#### (1) Federal Regulations Governing Survey Teams

The MDH argues that its decision to pay registered nurses more than other survey team employees has been influenced by "federal mandate" and "regulations," not by gender. MDH does not refer specifically to any particular federal regulation relevant to the instant dispute, although there are several which this court

finds to be relevant. These regulations pertain to the federal Medicaid program. Although a state's participation in the federal Medicaid program is voluntary, participating states must abide by the requirements imposed by Title XIX of the Social Security Act and regulations issued by the Health Care Finance Administration (the "HCFA"), which is the federal agency created by Title XIX to administer the Medicaid program. *See Hope Medical Group for Women v. Edwards*, 63 F.3d 418, 421 (5th Cir.1995), citing *Wilder v. Virginia Hospital Association*, 496 U.S. 498, 502, 110 S.Ct. 2510, 2513–14, 110 L.Ed.2d 455 (1990). For instance, 42 C.F.R. § 488.330(a)(1) provides that a participating State's survey agency will survey "all facilities for compliance or noncompliance with requirements for long term care facilities ..." and that "HCFA certifies the compliance or noncompliance of all State-operated facilities." Furthermore, 42 C.F.R. § 488.332 provides that "the State survey agency must establish procedures and maintain adequate staff to investigate complaints of violations of participation requirements" and that "the State survey agency retains responsibility for the investigation process." Survey teams are governed by 42 C.F.R. § 488.314, which provides that "[s]urveys must be conducted by a multidisciplinary team of professionals,[14] which must include a registered nurse." [15] A State's failure to conduct surveys in accordance with the requirements of Subpart E of the federal regulations governing certification of long-term care facilities will result in a finding of inadequate survey performance by the HCFA. *See* 42 C.F.R. § 488.318(a)(1)(iii). The HCFA may impose sanctions for a State's inadequate survey performance, including reduction of federal funding. *See* 42 C.F.R. § 488.320(c)(1). Clearly, the foregoing federal regulations require the MDH to field survey teams which include at least one registered nurse, or risk an HCFA finding of inadequate survey performance.

### (2) Market Factors Legitimate Basis for Pay Differential

According to the testimony of Patricia Klar, the MDH was losing its registered nurses and believed it would be able to retain them and attract new recruits only if registered nurses were reclassified from HFS II to Nurse III with a significant increase in salary. Klar noted that the market influenced the decision to reclassify the registered nurses. Gender, said Klar, played no part. This testimony was submitted by MDH to establish the "factor other than sex" defense provided by Title 29 U.S.C. § 206(d)(1). This exception to liability under the EPA is met only if sex provides no part of the basis for the contested wage differential. *Peters v. City of Shreveport*, 818 F.2d at 1155. The proof in the instant case satisfies this court that MDH was not merely using the market factor defense to mask a more general belief that women would work more cheaply than men as registered nurses. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223, 2233, 41 L.Ed.2d 1 (1974) (pay differential under EPA illegal if based on unwillingness of men to work as cheaply as women in same job). Moreover, this court is persuaded that MDH has established market factors as a valid reason other than gender for the pay differential between the Nurse III and the HFS II classifications and that reclassifi-

---

**14.** Examples of professionals set forth at 42 C.F.R. § 488.314(2) are physicians, physician assistants, nurse practitioners, physical, speech or occupational therapists, registered nurses, dietitians, sanitarians, engineers, licensed practical nurses and social workers. The States determine what constitutes a professional, subject to HCFA approval 42 C.F.R. § 488.314(3).

**15.** The team model provided by 42 C.F.R. § 488.110 for care facilities having 200 beds or less is for 2 – 4 members, to include a registered nurse plus another registered nurse, or a dietitian, sanitarian, or a social worker. For larger facilities the team may select persons from other disciplines as appropriate.

cation was not a pretense for paying men higher salaries.

While the United States Court of Appeals for the Fifth Circuit has not directly addressed the "market factor as a valid exception" issue, several jurisdictions have concluded that unequal wages based on market conditions are not prohibited by the EPA. *See Stanley v. University of Southern California,* 13 F.3d 1313, 1322 (9th Cir.1994) (an employer may consider market value of skills of a particular individual when determining his or her salary); *EEOC v. Madison Community Unit School District No. 12,* 818 F.2d 577, 580 (7th Cir.1987) (holding differences in pay between male and female basketball coaches justified by market considerations such as higher revenues and contributions precipitating from men's basketball; EPA is not a general mandate for sex-neutral compensation); *Horner v. Mary Institute,* 613 F.2d 706, 714 (8th Cir.1980) (employer may consider market value of skills). These authorities fully support market factors as a legitimate exception to liability under the EPA. Inasmuch as the MDH has established a legitimate factor other than gender for its decision to pay registered nurses at a higher rate than those employees in the classification of HFS II, MDH cannot be held liable for violating the EPA.

### (3) Education, Experience and Background Factors

Next, this court finds that MDH considered the experience and education of registered nurses, rather than gender, when it reclassified registered nurses under the Nurse III category. In the case of *Ottaviani v. State University of New York at New Paltz,* 679 F.Supp. 288, 338 (S.D.N.Y. 1988), *aff'd,* 875 F.2d 365, 371 (2d Cir. 1989), *cert. denied,* 493 U.S. 1021, 110 S.Ct. 721, 107 L.Ed.2d 740 (1990), the Court noted that experience, background, and education were legitimate foundations for pay differentials under the EPA, citing *EEOC v. First Citizens Bank,* 758 F.2d 397, 401 (9th Cir.), *cert. denied,* 474 U.S.

902, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985). In the instant case, the plaintiffs are not registered nurses, nor is anyone else employed in the classification of HFS II. Only registered nurses received a new classification and a pay raise in the instant case. Based on Patricia Klar's testimony, recruiting and retaining registered nurses was the only reason for the pay differential in question. Thus, the MDH has established another "factor other than sex" for reaching its decision to increase the pay of registered nurses over that of other persons occupying the HFS II classification, namely that registered nurses are educated to perform the services they monitor in long-range care facilities and have the requisite clinical background to satisfy the federal regulations governing certification surveys.

Satisfied that MDH has established two legitimate factors other than gender for its decision to pay registered nurses at a higher rate than those employees in the classification of HFS II, this court concludes that MDH cannot be held liable for violating the EPA, even if the plaintiffs had succeeded in establishing a prima facie case.

### III. *CONCLUSION*

This court finds that the failure of the plaintiffs to establish a prima facie case, coupled with the proof that the MDH paid Nurse III employees, including males, at a higher rate than the females (and males) in the HFS II classification based on legitimate factors other than gender precludes a finding of liability in the instant case. Therefore, a judgment will be entered in favor of the Mississippi State Department of Health and against the plaintiffs pursuant to Rule 58 of the Federal Rules of Civil Procedure.